Opinion delivered April 17, 1886.

---

[No. 3873.]

## Cal Harvey *v.* The State.

1. THEFT—EVIDENCE.—On a trial for theft of cattle, the State offered in evidence the recorded brand of the alleged owner, to which the accused objected, because the indictment charged the offense to have been committed prior to the record of the brand. *Held*, that the brand was admissible in support of the allegation of ownership.
2. PRACTICE—CONTINUANCE.—NEW TRIAL is properly refused if applied for because of the refusal of a continuance sought for the purpose of obtaining testimony not probably true.

APPEAL from the District Court of Baylor. Tried below before the Hon. J. V. Cockrell.

The conviction in this case was for the theft of one head of cattle, the property of Tom Waggoner, in Baylor county, Texas, on the third day of February, 1886. The penalty assessed against the defendant was a term of two years in the penitentiary.

The State introduced first a certified copy of the register of

the mark and brand of D. Waggoner. That certified copy showed the brand to be the letter ꟼ on the left side, flank, and hip, and the mark to be a crop and underbit from each ear. The said mark and brand were registered in Wise county, Texas, on the sixth day of February, 1882.

Tom Waggoner was the first witness for the State. He testified that he owned a half interest in the stock of cattle branded with a reversed ꟼ on the right hip, thigh, and flank. He had the entire control, management, and care of the cattle so branded. He had never authorized the defendant to take any of such cattle. The cattle described, numbering about fifty thousand head, ranged in Wichita, Wilbarger, and Baylor counties. Witness knew his cattle only by the brand.

Jacob Kahn testified, for the State, that he was a hide and wool merchant, doing business in the town of Wichita Falls. Witness purchased four hides from the defendant, on or about February 5, 1886, paying the defendant ten dollars for the same. Witness, at the same time, bought four and a half "quarters" of beef from the defendant. · Defendant executed a bill of sale to the witness for the four hides, which bill of sale was read in evidence. When witness pointed out to Mr. Board four hides as those purchased from the defendant, he thought he pointed them out correctly, but he has since been in some doubt.

Cross-examined, witness stated that he bought the hides from defendant between eleven o'clock and noon. He threw them on the sidewalk between his warehouse and a blacksmith shop, where he left them until night. He took them into his warehouse at night, and on Saturday morning hung them up on the outside of the warehouse, where they remained until Monday morning. Witness did not know the marks or brands on the hides, nor did he observe whether or not the tails and ears were intact when he bought them. Witness could not swear positively to any of the four hides except a small brindle one. Witness was not in the habit of keeping the hides he purchased in separate lots. He bought other hides on the day he bought the four referred to from the defendant. He knew that he had as many of seven green hides on the night of that day. The dry and green hides were piled separately. Witness was satisfied that five of the seven green hides he had on that night were purchased from defendant and Drew. Witness bought four hides from defendant and three from Drew on that day. None of the hides bought from defendant and Drew were "flint" hides. Three of the

hides purchased from defendant and Drew were hung up on one side of the house, and four on the other.

A. L. Board, sheriff of Baylor county, Texas, testified for the State, that Mr. Kahn pointed out to him four hides which he said he bought from the defendant, and three others which he said he bought from the Drews. One of the hides pointed out as having been bought from defendant was branded with a horizontal H on the hip and shoulder. Another was a blue roan hide branded IIL on the left side. Another was a red hide branded with a reversed ᑫ on the hip, thigh, and flank. The fourth, branded as the third, was a brown and white pided hide. Two were green and two were partially dried hides. The tails had been cut from each of the hides, and the ears had been disfigured. When pointed out to witness by Kahn and Johnson, three of those hides lay on one side of the house and four on the other. Two of the four lot, and one of the three lot of hides pointed out by Kahn were in the ᑫ brand. On one of the hides the ᑫ was branded in but one place.

A. E. Leston testified, for the State, that he was a butcher doing business in Wichita Falls. Defendant came to witness's shop on or about February 5, 1886, and asked if witness wanted to purchase any beef. Witness replied that he did, and asked defendant where he had the beef he proposed to sell. Defendant said that it would presently arrive in town in a wagon. He then went off. Not long after he left, other parties with whom witness had contracted, brought in some beef, and witness bought theirs instead of that of defendant. Defendant arrived with his beef in an ox wagon while witness was weighing the beef which he purchased. Witness observed that the defendant's beef was very poorly dressed, and that about six inches of brindle hide was left on the foot and hock of one quarter. He also saw a brindle hide in the wagon. Witness did not know how much beef the defendant had in his wagon.

Jabe Johnson testified, for the State, that he worked at the butcher shop of Mr. Kahn, in Wichita Falls, in February, 1886. On or about the fifth day of that month witness got three hides out of a horse wagon, which he hung on the east side of the warehouse. Witness did not know who owned the horse wagon. He knew that the defendant was driving an ox wagon on that day, and that he, defendant, removed five quarters of beef from that wagon on that day. On the same day the witness got four hides from the street between Kahn's house and the corner of a

neighboring feed store, which hides he hung up on the east side of the warehouse. He did not know who brought those hides to Wichita Falls, and placed them on the ground at the point stated. Witness pointed out the hides described to Mr. Board and sheriff Davis.

J. H. Bell testified, for the State, that, as hide inspector of Wichita county, he lived at Wichita Falls. On February 8, 1886, witness inspected seven hides that were turned over to him by Mr. Kahn. Among the seven were two branded ᑕ on the hip, thigh, and flank, and one with but one ᑕ brand on it. The ᑕ hides were fresh or green, the others dryer but not thoroughly dry. The ears were disfigured on each of the several hides. None of the hides were in the brands recited in the bill of sale read in evidence as the bill of sale executed to Kahn by the defendant as "J. Harvey." Two of the ᑕ hides were in Waggoner's brand. The hide in the single ᑕ brand was so cut that witness believed if it was originally the Waggoner brand two of the ᑕ's would have gone with the fragments cut off.

The State next introduced in evidence a certified copy from the records of marks and brands of Baylor county, Texas, showing the registration of the cattle brand of Waggoner & Son on the tenth day of March, 1886, which brand was a reversed ᑕ on the right hip, right flank, and right thigh. The State closed.

Bob Hopper was the first witness for the defendant. He testified that he saw the defendant kill a brindle cow in Sam Harvey's pasture, on or about February 1, 1886. Witness did not notice the animal's mark at the time of the killing, but had since examined the head, which was still in Sam's pasture, and found the mark to be a split in the left ear and an under half crop in the right ear. Defendant took the beef to Wichita Falls, starting on the same day, and occupying three or four days on the trip. Witness went to Wichita Falls with the defendant.

Cross-examined, witness testified that, at the time of this trial (March 13, 1886), he had been living with Sam Harvey about two months. Van Smith was present in the pasture when the defendant killed the brindle cow. It was after midday when witness and defendant started to Wichita Falls with the beef. The parties started in a horse wagon, but the horses balking they returned and got an ox team. Of the beef hides taken to the Falls by the defendant, two of them had been denuded of the ears. Witness did not know whether the ears were on the other hides or not. There were two beef heads in Sam Harvey's

pasture. The beef to which one of the heads belonged, the defendant said, was one he killed on the day before he killed the brindle cow. Defendant had two beeves in the wagon when he got to the Falls. He sold one of the quarters, and left the other seven at Kahn's. Two of the hides taken by defendant to the Falls were dry hides, and one of them was claimed by Sam Harvey as his. Witness did not know what brand was on any of the hides. Witness was present when the beef was unloaded at Kahn's place. The two green hides were on the bottom of the wagon; the beef was on top of the green hides, and the two dry hides were on the beef. One of the green hides was blue in color, and the other was brindle. Witness had been at Sam Harvey's two or three days when the defendant killed the brindle cow. Van Smith and witness held the cow with a rope, and defendant knocked her in the head with an axe. The feet were left on the carcasses. Witness did not know where Sam Harvey was when the brindle cow was killed. Witness knew that the two green hides taken by the defendant to the Falls came from the two animals killed by him in the pasture. The ears were not on the hides when taken to the Falls. The heads were still in the pasture, where the animals were killed, lying about three feet apart. Sam Harvey asked witness to go with him to look at the heads in the pasture, and the witness went with him. Witness did not tell Sam Harvey the facts to which he was going to testify on this trial. Sam did not tell witness what, if anything, he knew about the killing of the animals. Witness had never talked with the defendant, nor with the defendant's wife, about this case. Witness was present when the hides were put in the wagon to be taken to the Falls, but did not help put them in. The animals, both being cows, were killed about two hundred yards from the fence and from the public road, in Baylor county, Texas.

Sam Harvey, the defendant's brother, testified, in his behalf, that the defendant killed two beeves in his, witness's pasture, about February 1, 1886. Witness had seen these beeves in his pasture several times before they were killed. Witness sent one hide to Wichita Falls by the defendant.

Cross-examined, the witness testified that he did not see any beef in defendant's wagon when he started to the Falls, but was satisfied that the wagon contained beef. He saw that the wagon contained some hides, and knew that one of the hides was his. Defendant said that he purchased the animals which he slaugh-

tered, but the witness had no idea from whom he bought them. None of the hides taken to Wichita Falls by the defendant were branded with three reversed ɑ's, nor with a P, nor with an inclined H. Witness last saw the heads of the two animals killed, in the pasture, about two days before this trial. One of his brothers was with him. Witness did not think that he ever asked any one to go with him to examine those heads. He and Hopper went through the pasture once to see after some cattle, and passed by the heads. The marks on the blue head were an underbit in each ear. The brindle head was marked by a split in one ear and an under halfcrop in the other. Witness had no recollection of testifying on the examining trial that he did not know anything about his brother killing two beeves in the pasture. He may have testified on that trial that he did not see the animals killed. Witness did not state on that trial that one of the hides taken by the defendant to the Falls was branded with a horizontal H. Bob Hopper and Van Smith left witness's house with the defendant when the latter started to the Falls.

The motion for new trial raised the questions discussed in the opinion.

*Taylor & Goss* filed an able brief and argument for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for the theft of cattle.

The prosecutor's brand was recorded in the clerk's office of Wilbarger county, on the tenth day of March, 1886. This was after the theft and after the indictment was filed. The range of the prosecutor's cattle, consisting of about fifty thousand head, was in Wichita, Wilbarger, and Baylor counties. To the introduction of a certified copy of the record the appellant objected, because not recorded before the theft. This proposition is decided against appellant in Priesmuth v. The State, 1 Texas Court of Appeals, 480, and Spinks v. The State, 8 Texas Court of Appeals, 125.

Viewed in the light of the evidence adduced on the trial, there was no error in overruling the application for a continuance. The facts expected to be proved by the absent witness are not probably true, and we do not think it at all probable that if Smith had been present and had sworn to these facts that the

result would have been different. The jury would, we think, have convicted defendant notwithstanding these facts.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*