### TOM BROTHERTON ALIAS DOCK BROTHERTON V. THE STATE.

#### *No. 3858.    Decided November 18.*

1. **Special Venire—Talesmen—Practice.**—When a special venire has been exhausted, before the completion of the jury, it is provided by article 612, Code of Criminal Procedure, "that the court" shall order the sheriff to summon any number of persons that it may deem advisable for the formation of the jury. And an objection that talesmen so summoned had not been drawn by the jury commissioners, and that defendant had not had one days service of said list, is not maintainable.

2. **Same.**—A defendant is not entitled to service of a list of talesmen summoned.

3. **Bill of Exceptions.**—In order to have a bill of exceptions reviewed in this court, such bill must manifest the error complained of. This court will not supply omissions in bills of exception.

4. **Same.**—Where, upon request of counsel for defendant appointed by the court, the case was set for trial at a particular hour of the day, and at the hour named said counsel moved for a continuance, which was overruled, and counsel then demanded a postponement of the case for a full day, but the bill of exceptions did not state the reasons for this demand, *held,* that the action of the court overruling the motion is not shown to have injured defendant, and such bill of exceptions is insufficient to show the matter sought to be reviewed.

5. **Counsel Appointed by Court.**—Article 511, Code of Criminal Procedure, which provides that counsel appointed by the court to defend a capital case "shall have at least one day to prepare for trial," is not mandatory, and is only intended to secure time for necessary preparation for an intelligent management of the case, to the end that the accused shall have a fair trial.

6. **Attachment for Absent Jurors.**—An attachment can not be issued for a special venireman who has not been summoned.

7. **Continuance—Motion for a New Trial.**—Where the facts set out in a motion for continuance are shown by the evidence adduced on the trial to be untrue, it is not error to overrule the motion for a new trial, based upon the court's action in overruling the motion to continue.

APPEAL from the District Court of Wichita. Tried below before Hon. George E. Miller.

This appeal is from a judgment of conviction for murder in the first degree, in which the punishment was assessed at death.

The murdered woman, Josie Brotherton, was the divorced wife of the defendant.

The evidence, as contained in the statement of facts, is very voluminous, and is wholly circumstantial. It appears that some time prior to the homicide the parties had not lived happily together, and that the defendant had been prosecuted in the Mayor's Court and convicted for an assault and battery upon his wife. They separated, and she went off and boarded at the house of one Charles Saunders; and it was at this house that she was murdered on the night of the 10th of June, 1891. After they had separated she instituted suit for divorce, and on the first day of June, nine days prior to the murder, a decree of divorce had been rendered by the District Court in her suit. After this defendant was heard to make threats against her. On the afternoon before the killing the parties met at the deceased's mother's house, and a little wordy altercation occurred between them there about some money, which the deceased's mother had given the defendant for the purpose of buying medicine for his and deceased's infant child, and which he had failed to do.

On the night of the 10th of June, about 11:30, Charles Saunders, at whose house deceased was living, when he returned home from his work at the club room, on entering the house found the woman dead in bed, and there was no one in the house with her except her two-year-old baby, which was lying asleep beside her. He immediately raised an alarm, and a number of colored persons and some few white hastened to the scene. They found the woman lying upon a bed, the body covered with a spread; her head was mashed in, and, as described by one of the witnesses, it looked like about a half a water bucketful of blood and brains on the floor, on the window curtains, and even the ceiling overhead had blood and brains on it. It looked like the wounds had been inflicted with some blunt heavy instrument. The defendant had been seen that night, by one or more parties, about 10 o'clock in the neighborhood of and going in the direction of Saunders' house. About 11:30 p. m. defendant appeared at the house of one Cam Smith, and asked his wife's permission to stay all night, which was given, and he pulled off his clothes and laid down. In some twenty-five or thirty minutes afterward the alarm occasioned by the finding of the dead body reached Cam Smith's house, and defendant, with the others, got up to go to the scene of the murder. In dressing he put on clothes of another party, leaving some of his own, and wore off the hat of Cam Smith, claiming that he could not find his own. Arrived at the body he pretended to be much distressed, but the parties present, who witnessed his conduct, were satisfied that his manifestations of grief were all assumed, and an officer who was present arrested him for the murder. After he was conveyed to jail he was made to take off his shirt, which was found to have spots upon the bosom, which spots were afterward microscopically examined by expert physicians, and pronounced by them to be blood spots and brain tissue. His clothing

and hat, which he had left at Cam Smith's, were also gotten the next morning, and they were found to have blood stains and spots upon them, which the experts also pronounced to be blood stains and brain tissue. Defendant first claimed that he got these blood stains at Dallas some days before the homicide, but afterward stated that they came from his nose, which had bled about 5 or 6 o'clock of the afternoon of the killing.

The day after the killing and not far from the house of Cam Smith, close to the railway track, a heavy coupling pin, which belonged to a train of freight cars which had been backed up on the track close by the house of Cam Smith, was found; and upon it there were blood stains, and sticking to these stains were strands of black curly hair, which corresponded with the hair on the head of the deceased. The experts testified that the wounds upon the head of the deceased could have been made with this instrument.

These are about the salient features of the evidence upon which the conviction rests.

*J. P. Boyd,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the first degree, and the jury assessed against him the death penalty.

After the special venire had been exhausted, a list of twenty-four talesmen was tendered the appellant out of which to complete the jury; whereupon he objected to the list, because it had not been drawn by the jury commissioners, and because he had not had one day's service of said list prior to the time he was to select the jury to try him. Neither objection has any merit in it.

When a special venire has been exhausted, and a jury has not been selected, "the court shall order the sheriff to summon any number of persons that it may deem advisable for the formation of the jury." Willson's Crim. Stats., sec. 2248; Weathersby v. The State, 29 Texas Ct. App., 278. A defendant is not entitled to service of a list of talesmen summoned. Johnson v. The State, 4 Texas Ct. App., 268; Drake v. The State, 5 Texas Ct. App., 649; Harris v. The State, 6 Texas Ct. App., 97; Gardenhire v. The State, Id., 147; Sharp v. The State, Id., 650; Richardson v. The State, 7 Texas Ct. App., 486.

Several bills of exception are found in the record, in which it is stated that the juror named therein was examined as to his conclusions touching the guilt or innocence of the appellant. The answers of the juror are also embodied in the bill. These bills all fail to state which party interposed the objection. They do not state the objection urged, and they do not show the ruling of the court on the objections, and

fail to show in fact that any objection was made by either party. They do not show what became of the juror, whether excused or not. This court will not supply omissions in bills of exception. The bills of exception must manifest the error complained of in order to have it passed on or determined. Willson's Crim. Stats., sec. 2516.

On the 17th day of June appellant was brought into court for the purpose of having counsel selected for his defense, and to make necessary preparations for his trial. He informed the court of his ability to employ counsel, and notified the court of his selection of J. P. Boyd, an attorney of the court, as such counsel. On the following day the said counsel caused all necessary process in the case to issue.

The case having been set for June 22, was called on the morning of that day for trial; whereupon the said counsel informed the court that, inasmuch as the defendant had not arranged for the payment of his fee, he did not consider himself employed in the case. The court thereupon appointed him to represent the defendant during the progress of the trial.

Said counsel then requested the court to postpone the case for an entire day. This request was granted, and at the same time the court requested counsel, if he could do so, to proceed with the trial at an early hour. Counsel assented to this request of the court, and fixed the hour of 2 o'clock that evening for that purpose. Upon the arrival of that hour the case was called for trial. The defendant announced "Not ready," and presented an application for a continuance. This was overruled, and counsel again demanded a postponement of the case for a full day. The basis for this demand was not stated in the bill of exceptions. The party had been arraigned on the 17th, and it is not stated that the venire had been served on the defendant.

The inference is that the request is based on article 511 of the Code of Criminal Procedure, wherein it is provided that counsel shall have at least one day to prepare for trial when appointed to defend a capital case. If this inference be correct, the bill manifests no error, because the counsel had been preparing the case since the 18th, and had fixed the hour himself for announcement in the case after demand of the entire day, and had thereby waived any further time. The bill does not state that counsel was unprepared to proceed with the trial of the cause. No injury is shown to have occurred to defendant in this matter. This statute is not mandatory, and is only intended to secure time for necessary preparation for an intelligent management of the case, to the end that the party being tried shall have a fair trial.

Twenty-two of the selected veniremen were not summoned by the sheriff, and their names were not embraced in the copy served on the defendant. Appellant requested that process issue to compel the attendance of these jurors, and that the trial be postponed until they could be brought into court.

Process may issue for such jurors as have been summoned and are absent. Attachment can not issue for a juror who has not been summoned. Such attachment is only authorized to "issue for any party summoned who is not present, to have him brought before the court." Code Crim. Proc., art. 618; Thompson v. The State, 19 Texas Ct. App., 593.

The facts set out in the application for a continuance are shown by the evidence adduced on the trial to be untrue. This is manifest from the testimony of the defendant himself. When arrested, a few hours after and for the murder of his wife, appellant had blood stains on his clothing. With these blood stains was intermingled brain tissue. His account of the presence of those stains was that they were produced by blood from a wound on his head, received at the hands of a party who robbed him in Dallas a few days prior to his arrest for the murder of his wife. The stains were found on his coat, shirt, and hat. Testifying on the trial, he stated that these blood stains were caused by his nose bleeding, and from this source the drops fell upon his clothing, and produced the stains found on said clothing and hat. He did not attempt to account for the presence of the brain tissue in the blood spots.

The evidence shows that the unfortunate woman was sleeping at the time she was murdered, and never moved from her restful position when the fatal blow was inflicted upon her head. By her side was quietly sleeping her two-year-old child. On the window curtain, walls of the room, floor, and ceiling were found spots of blood, mingled with the brains of the murdered woman. She had retired for the night, was evidently quietly sleeping, when the fatal blow descended upon her head and crushed it. The iron bar used by the assassin would weigh about five or six pounds.

While the facts are circumstantial, still they are cogent, and leave no doubt of the guilt of the defendant, and point with indubitable certainty to him as the perpetrator of the awful crime.

The charge is a fair and correct embodiment of the law applicable to the facts adduced. We find no error in the record, and the judgment is affirmed.

*Affirmed.*

White, P. J., absent.