, Francisco Reyons· v. The State.

*No. 347.   Decided March 24.*

1. **Murder—Practice as to Putting All Eye-Witnesses on the Stand.**—On a trial for murder the prosecution is not required to place every eye-witness on the stand, but may use just so many of them as in the opinion of the prosecuting officer and the court are sufficient to justify a legal conviction. Following Mayes v. The State, ante, p. 33.

2. **Same—Charge—Homicide in Defense of Another.**—On a trial for murder, where it appeared that two parties were engaged in a difficulty, and one was endeavoring to stab the other with a knife, and deceased interfered to prevent him from doing so, whereupon he assaulted deceased with his knife, and the son of deceased interfered ·for the protection of his father, and defendant, who was a looker-on, saw and knew all that was transpiring—knew that the party who was endeavoring to use the knife was in no danger from deceased or his son—fired and killed deceased, *Held*, that a charge was correct which, in effect, instructed the jury, that if defendant saw the origin of the difficulty, * * * and knew that his friend was in no danger, but that the interference with him by deceased and son was simply to prevent him from injuring the party he was endeavoring to stab with his knife, or themselves, and knowing said facts defendant with a sedate and deliberate mind and formed design did with a pistol shoot and thereby kill deceased, then defendant would be guilty of murder in the first degree.

3. **Same—Manslaughter.**—On a trial for murder, where the facts in evidence were as stated in the above paragraph number 2, it was not error for the court to refuse instructions upon the law of manslaughter.

4. **Continuance.**—An application for continuance is properly overruled if it be shown that the witness was not present at the time and place of the occurrence and could have known nothing about it; and again, when the proposed testimony of a witness is not probably true; and again, when the evidence of a witness is too generally stated, or where conclusions are stated without the facts upon which they are based.

APPEAL from the District Court of Travis.    Tried below before Hon. J. H. ROBERTSON.

This appeal is from a conviction for murder of the first degree, with the punishment assessed at death. This is the second appeal in this case. The former appeal was also from a conviction for murder in the first degree, with the death penalty. Reyons v. The State, 32 Texas Crim. Rep., 151.

The facts stated in the opinion of Judge Davidson, together with those stated in the opinion of Judge Simkins on the former appeal, sufficiently show the nature and character of the case as made by the evidence.

After the State had closed her evidence the counsel for defendant moved the court to require the district attorney to call and examine three other parties who were eye-witnesses to the transaction, and who were present in court, having been summoned as witnesses for the State. The court refused to do so, informing counsel for defendant

that they could put said witnesses upon the stand and examine them if they desired to do so. This they declined to do, and saved a bill of exceptions to the ruling of the court. After the court had read the charge to the jury, defendant's counsel requested the court to submit to the jury the law of manslaughter and justifiable homicide, which the court refused to do, and defendant reserved a bill of exceptions to the court's refusal to so charge.

*Hugh L. Davis*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—The conviction in this case was of murder in the first degree, and the punishment assessed was death.

Ferma Lerma, Manueal Aguirre, and Clem King, having been summoned as witnesses by the State, were present at the trial. The defendant moved the court to require the prosecution to place them on the stand and elicit their testimony. This was refused, and an exception reserved. The State's case was made out by the testimony of eye-witnesses, and it is therefore unnecessary to discuss the rule laid down in Thompson's case, 30 Texas Criminal Appeals, 325, relied on by defendant. That case is authority to the extent that it holds the State should prove the guilt of the accused by positive rather than by circumstantial evidence. It in no sense sustains the position of appellant that all eye-witnesses to a homicide are required to be placed on the stand and examined by the State. In fact, we do not understand that such a rule of practice has ever obtained in this State, nor that it would be a correct one under our procedure. In the case of Wheelis v. The State it was said, Judge Hurt delivering the opinion of the court: "It seems from the brief of the counsel that the Hunnicutt opinion (20 Texas Crim. App., 632) is so construed as to require the State to introduce all the testimony of witnesses to the transaction in all cases. My brethren do not, nor did they in that case, intend to convey any such idea. It is expressly stated in that case, and in the Phillips case (22 Texas Crim. App., 139), that this matter is in the sound discretion of the court. That there may be cases in which the rule would not apply is clearly stated. We advise counsel to reread the Hunnicutt case, and it will be seen that no general rule is attempted to be stated." 23 Texas Crim. App., 238. In Gibson's case, 23 Texas Criminal Appeals, 423, the same court again announced the same doctrine in the following language: "Neither the Hunnicutt (20 Texas Crim. App., 632) nor the Phillips (22 Texas Crim. App., 139) case contains the doctrine that in all cases, and under all circumstances, must the State place upon the stand each and every eye-witness to the transaction." This doctrine has again been fully reaffirmed by this

court in Mayes v. The State, ante, p. 33, and in Jackson v. The State, post, p. 281.

At an early date, at common law, the rule of practice was as contended for by appellant. This grew out of the fact that under that system the accused had no right to compulsory process in capital cases, and because "the prisoner was not even permitted to call witnesses, though present, but the jury were to decide on his guilt or innocence, according to their judgment, upon the evidence offered in support of the prosecution." 1 Chit. Crim. Law, 624, 625. And while later on the practice of rejecting evidence for the accused was abolished, yet the witnesses on his behalf "were merely examined without any particular obligation, and therefore obtained but little credit with the jury." Id. By reason of the fact that they were not sworn they did not, and could not, obtain the same degree of credit as those introduced in support of the prosecution. This unjust custom rested upon practice, and not upon law. It certainly could not be held to be just and reasonable, and was entirely done away with by an act of parliament. Id., 615, and notes. It then became the settled law of England that no witness could be examined in any criminal proceeding except upon oath. "And this rule is so universal in its operation that a peer can not be examined upon his honor, but must take the same oath with any other individual." Id. The reason for the rule having ceased, it was but a natural and reasonable sequence that the rule itself should pass away. Whether it did or not, or whatever may be the common law rule, we do not think it ever applied in this State, for with us the defendant is and always has been entitled to compulsory process for his witnesses, and can take the depositions of witnesses residing in other jurisdictions—a right denied the State. These witnesses are required to give their testimony under oath, and in so far as the law can do so are placed upon the same plane with the witnesses for the prosecution. In the trial the accused has at least equal rights with the government in regard to the introduction of testimony, and the State must make out its case beyond a reasonable doubt; else the defendant is entitled to an acquittal. Until this has been done, he can safely rest his case, with the assurance of an acquittal and immunity from any sort of punishment. When the State has made out its case beyond such reasonable doubt, it may rest its case, and it then devolves upon the accused to offer such evidence as he may deem proper. This is discretionary with him. The courts will not compel him to do so. Code Crim. Proc., art. 660. As was previously said, we are not discussing the rule that the State should introduce the best evidence of which the case is susceptible. We hold that the State is not required to place every eye-witness on the stand. It may make out its case sufficiently to justify a legal conviction, and proceed no further.

The court charged the jury: "If Marcellano Lassano * * * was making an unlawful assault upon one Jose Romero with a knife, and was seeking to cut said Romero with said knife in the presence of M. M. Hornsby, then said Hornsby had a right to interfere to prevent said Marcellano from cutting said Romero; and if, when Hornsby interfered to protect said Romero, said Lassano turned upon and assaulted Hornsby ·with said knife, then his son, Make Hornsby, had the right to interfere to prevent injury to his father, and the said Hornsby would have been authorized to use sufficient force to protect both said Romero and M. M. Hornsby from injury, and if they used no more force than was necessary to accomplish this end, then the defendant would not under the law be authorized to interfere to prevent the protection of said Romero and said Hornsby from said Lassano; and if the jury so find the facts to be, and further find beyond a reasonable doubt that the defendant, Francisco Reyons, saw the origin of the difficulty between said Lassano and Romero, and knew that Lassano was in no danger, but that the interference with him by the Hornsbys was simply to prevent his injuring said Romero or said Hornsby, and knowing said facts said defendant, Francisco Reyons, interfered, and with a sedate and deliberate mind and formed design to kill said M. M. Hornsby—that is, with express malice, as defined in the seventh paragraph of this charge—did with a pistol shoot and thereby kill said M. M. Hornsby, then the defendant would be guilty of murder in the first degree." Exception was reserved to this portion of the charge, because "the evidence shows, or leaves in question the fact to be whether the defendant, after seeing the inception of the difficulty, did not think it ended as to Lassano and Romero, and when called to assist Lassano supposed him assaulted by the Hornsbys unlawfully." We think this an admirable application of the law to the facts of this case. If appellant was aware of the origin of the difficulty, he was evidently aware of the intention of the deceased and his son. He knew deceased had seized Lassano for the purpose of preventing him from murdering Romero. He also knew that Make Hornsby, the son of the deceased, was engaged in the same business or to protect his father from the murderous assault of Lassano. Neither of the Hornsbys had inflicted a blow upon Lassano, but were holding him to prevent him from killing Romero. But a very short time elapsed from the time Lassano drew his knife for the purpose of taking the life of Romero until the deceased was killed by appellant, and if, when deceased was killed, Lassano had abandoned his intention to kill Romero, he was evidently intending to use his knife upon the Hornsbys. The acts and intentions of Lassano were well known to appellant, for he witnessed the whole transaction. The facts did not call for a charge on the law of manslaughter; wherefore the court did

not err in refusing to submit such issue to the jury. This question was settled on the former appeal.

The motion for continuance was properly overruled, and this seems to be conceded, inasmuch as it is not urged in brief of counsel. The witness Frank Flores was not present at the place of the killing, and the testimony of the witness Soldonio is not probably true, if sworn as stated in the application. The evidence of the witness Ureal is too generally stated. If he was present at the time and place of the homicide, the facts expected to be proved by him should have been stated in some other manner than mere conclusions. Willson's Crim. Stats., sec. 2165; White v. The State, 32 Texas Crim. Rep., 625. We deem it unnecessary to review the evidence. If the testimony adduced by the State be true, then the jury were justified in their verdict.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.