SAM WADE, ALIAS ELIJAH KIMBALL, v. THE STATE.

No. 1454. Decided January 31, 1912.

Rehearing denied February 28, 1912.

**1.—Rape—Continuance—Rule Stated—Motion for New Trial.**

Where, after trial and conviction, the court is called on by motion for new trial to reconsider the refusal of a continuance, the truth; materiality, and sufficiency of its allegations are to be considered in connection with the evidence adduced at the trial. Following Mitchell v. State, 36 Texas Crim. Rep., 379, and other cases.

**2.—Same—Impeachment—Testimony Not Probably True—Statutes Construed.**

Where the trial court overruled defendant's motion for a continuance, and the absent testimony, if admissible, would only be of an impeaching character, and that the same facts if true could have been proved by witnesses present on the trial; and that besides, the same was not probably true, there was no error in overruling the motion. Article 597, Code Criminal Procedure.

**3.—Same—Evidence—Declarations of Prosecutrix—Res Gestae.**

Where the statements of prosecutrix to the State's witness were so closely connected with the act of rape and separation of the parties, both as to time and place, as to be a part of the res gestae of the transaction, there was no error in admitting same in evidence.

**4.—Same—Bill of Exceptions—Practice on Appeal.**

Where defendant accepts a bill of exceptions as qualified by the court, he is bound thereby. Following Blain v. State, 34 Texas Crim. Rep., 448, and other cases.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of rape, the evidence sustained the conviction, there is no reversible error, although the defense evidence would support a different result.

**6.—Same—Charge of Court—Words and Phrases—Reasonable Doubt.**

Where the court charged the jury that if prosecutrix, by her acts and conduct, caused defendant to believe that he had her consent, to acquit him, the omission of the term "words" could not have misled the jury. Nor was there any error in not charging on reasonable doubt on this phase of the case where this doctrine had been applied to the case as a whole.

**7.—Same—Charge of Court—Definition of Rape.**

Where the court gave the statutory definition of rape in the outset of his charge, but limited the case to the allegation of force and threats as alleged in the indictment, there was no error.

Appeal from the District Court of Caldwell. Tried below before the Hon. B. G. Neighbors, special judge.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*R. B. Ellis* and *S. R. Graves* and *O. Ellis, Jr.,* for appellant.—On the question of the insufficiency of the evidence: Tyler v. State, 46 Texas Crim. Rep., 10; Price v. State, 36 Texas Crim. Rep., 143; Arnett v. State, 40 Texas Crim. Rep., 617; Perez v. State, 50 Texas Crim. Rep., 34; Smith v. State, 56 Texas Crim. Rep., 316; Elliott v. State, 49 Texas Crim. Rep., 435; Kennon v. State, 42 S. W. Rep., 376.

On question of the court's charge on consent: Pettus v. State, 58 Texas Crim. Rep., 546; Owens v. State, 39 Texas Crim. Rep., 391; Perez v. State, 48 Texas Crim. Rep., 225.

On the question of the court's charge on resistance: Price v. State, 36 Texas Crim. Rep., 143, and cases above cited.

On question of admitting declarations of prosecutrix: Reddick v. State, 35 Texas Crim. Rep., 463; Edmondson v. State, 44 S. W. Rep., 154; Jones on Evidence, p. 424, Pocket Edition, and cases above cited.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was convicted of rape, and his punishment assessed at five years confinement in the State penitentiary.

1. Appellant complains that the court erred in overruling his application for a continuance. By one of the witnesses, Elnora Warren, he states he expects to prove that "she saw the prosecuting witness Mary McVey shortly after the alleged rape and there were no bruises or other indications of an assault upon her person." By the witness Bob

Krouse it is stated he expected to prove that "the prosecuting witness is a married woman over 16 years of age, and that the witness Krouse had often had sexual intercourse with the prosecuting witness, and that he had lived with her·as his wife." There is no process of any character attached to the application, nor the return of the officer, if any had been made, is not shown; nor is there any excuse given why this is not done. In the application it is stated: "One of said processes has been returned, having been properly served, but the other has not," without showing which witness had been served and which had not been. The court, in approving the bill, states: "No issue was made by the defense as to injury on knee of prosecutrix and no evidence offered in the trial that witness Elnora Warren ever saw or knew prosecutrix. On the showing made by the State and in the light of the defense the testimony of said witness was probably not true. The testimony of the witness Bob Krouse was immaterial and probably not true." The rule adopted by this court is that, after trial and conviction, the court is called on by motion for new trial to reconsider the refusal of a continuance, the truth, materiality and, sufficiency of its allegations are to be considered in connection with the evidence adduced at the trial. (Mitchell v. State, 36 Texas Crim. Rep., 279; Henry v. State, 38 Texas Crim. Rep., 306; McAdams v. State, 24 Texas Crim. App., 86.) The evidence expected to be proved by Bob Krouse would be immaterial. It might be a fact that said witness had had carnal intercourse with the prosecuting witness, yet this would not authorize nor justify defendant in committing the offense of rape upon her, if he did do so. The evidence, if admissible, would only be so for the purpose of affecting her credit as a witness, and this has always been held insufficient to authorize a continuance. (Garrett v. State, 37 Texas Crim. Rep., 198; Rodgers v. State, 36 Texas Crim. Rep., 563; Butts v. State, 35 Texas Crim. Rep., 364; Franklin v. State, 34 Texas Crim. Rep., 203.) As to the testimony of the other witness, the court in his qualification states that it is not probably true, and "that the defense had a number of other witnesses in attendance who saw the prosecuting witness after the alleged rape, and four or five negro women who followed prosecutrix to the train a day or two after the alleged offense, and no effort was made by defendant to make this proof," and that there was no proof that the witness knew the prosecuting witness or ever saw her. This court has held that an application for a continuance for an absent witness is properly overruled when it appears that the same facts, if true, could have been proven by witnesses present and testifying at the time. (Easterwood. v. State, 34 Texas Crim. Rep., 400; Bluman v. State, 33 Texas Crim. Rep., 43; Jackson v. State, 31 Texas Crim. Rep., 552; Duncan v. State, 30 Texas Crim. App., 1.) And especially is this true where the evidence is probably not true. (Carver v. State, 36 Texas Crim. Rep., 552; Reyons v. State, 33 Texas Crim. Rep., 143; McKinney v. State, 31 Texas Crim. Rep., 583.) The evidence in this case proves beyond dis-

pute the prosecuting witness had her knee injured; in fact, it is not denied by any witness. Under all these circumstances we can not say that the trial court erred in overruling the motion under the discretion conferred upon it by subdivision 6 of Article 597 of the Code of Criminal Procedure.

2. In another bill appellant complains that the witness Clara Castle was permitted to testify "May McVey told me that Sam Wade jerked her out of the buggy; knocked her knee up against the buggy; threw her down on the ground and did what he wanted to her; that she was crying, and that Sam Wade did this after taking her out into the field. May made this statement to me on the night of the alleged rape." Appellant's objections were that the statement was hearsay; that it was offered as original testimony, and no attempt had been made to impeach the prosecuting witness; that said question called for particulars in the case about the alleged rape, and was made in the absence of the defendant. The court, in approving the bill, states: "The statements of prosecutrix to witness Castle were so closely connected with the act of rape and separation of parties, both as to time and place, as to be a part of the res gestae of the transaction, and was so admitted," the witness Castle further stating that the "prosecutrix was crying while she was telling me and she showed me her bruised knee at the same time." When a person accepts a bill as qualified by the court he is bound by the qualification. (Blain v. State, 34 Texas Crim. Rep., 448; Hardy v. State, 31 Texas Crim. Rep., 289; Levine v. State, 35 Texas Crim. Rep., 647; Brown v. State, 32 Texas Crim. Rep., 119; Jones v. State, 33 Texas Crim. Rep., 7.) If the statement of the judge is correct, and we have no reason to question it, and neither does the bill attempt to show that it was not admissible as res gestae, nor does any objection made exclude that it was so made, the court did not err in admitting the testimony. (Craig v. State, 30 Texas Crim. App., 619; Castillo v. State, 31 Texas Crim. Rep., 145.)

These are the only bills of exception in the record, except the bill reserved to the action of the court overruling the motion for a new trial. In this there are many assignments based on the insufficiency of the evidence, and appellant has filed an able brief in which he earnestly insists that the evidence does not support the verdict. If we should view the case from the standpoint of defendant alone, and accept the testimony offered in his behalf as true, and wholly ignore the evidence offered in behalf of the State, there would be force in his contention. But the evidence for the State, as we view it, makes out a strong case. The prosecuting witness, May McVey, testified that "she was a stranger in Reedville, the place where the offense was alleged to have been committed; that she went with appellant to the party at the suggestion of her cousin." "I do not know what time we left the party; this was the first time I ever went with him; after we left the party he began to talk to me about what he wanted me to do and I told him I wasn't going to do it, and when we went to the wire gap

he led the horse through, I went to get out of the buggy. I started to get out of the buggy to run. I was scared of him, he told me if I got out of the buggy he would kill me. I started to get out and he dared me to get out, he did. He was there at the wire gap and went up in the field a little piece and went to make down the pallet and then I started out and he told me if I got out he would kill me. We did not have to go through that field in the buggy; he taken me a different way; we went into the field in the buggy and stopped the horse and he got out and taken a white blanket and spread it down. I wanted to get out and started to hollering and crying and told him I did not want to do what he wanted me to do. Then he kept beating me, and told me if I didn't hush, he says, 'I will beat you,' and he told me he would marry me if he got me that way, and I told him that I didn't want to do anything like that, and he jerked me out of the buggy and I think my knee must have fell against the buggy wheel or something. I thought that my knee fell against the buggy wheel and he drug me to the pallet then. I think it must have, there was a bruise, I couldn't walk, it was sore a good while, when I came to Lockhart I was limping and it was sore for sometime afterwards, when he jerked me out of the buggy he drug me to the pallet. He threw me on the pallet. I was crying and swinging against him; he kept tussling me and went to pulling up my clothes and I went to hollering and he got on me and caught both arms and mashed me down on the pallet. At that time he used violence on me and beat me when he had me down on the ground. I did not submit to him. I told him to the last that I wasn't going to do it. He went to mashing me down. He went to raising my dress and got on me, he did, and told me that if I got in the family way that he would marry me, and I told him I did not want him, and he told me to lock my arms around his waist and if I would he wouldn't beat me and he went on and did it to me against my will and against my consent; he told me if I told it he would kill me. He overpowered me and I couldn't help it. I didn't put my arms around him. When he got through with me he set up and went to the buggy and told me to come on and I didn't want to go and kept crying. I did not know the way back or I would have left him."

The State introduced, without objection, the confession of defendant, which is as follows: "My name is Elijah Kimball, but they all call me Sam Wade. Last Thursday night I went to a party at the school house at Reedville from the Bill Schawe place. I went with Mary McVey in a buggy. On the way home I had intercourse with Mary. I hit her with my hand three or four times to scare her and make her keep quiet. This was while we were in the buggy and on the ground both. I lifted her out of the buggy, catching hold of her around the neck and around the legs. I then spread the lap robe out on the ground and laid her down on it myself. I pulled up her clothes and

got on top of her. I was lying on her when I hit her a time or two to scare her. I told her to open her legs and she did so. She cried through the first part of it. This happened out in the field about twice as far as this courthouse to the north side bank from the road. I took her out in the field off of the road to do it to her. As we went through the gate into the field Mary said something about getting out of the buggy and I told her not to get out. She put her arms around my neck while we were doing it, but I told her to and hit her with my hand. I asked her to submit to me on the way to the party but she told me she was scared and wouldn't do it."

This testimony amply supports the verdict, and while appellant's counsel ably argue that there is evidence which would support a finding that the intercourse was had with the prosecuting witness' consent, yet this was a question for the jury to determine. The court instructed the jury:

"You are further charged, if you believe from the evidence that the said Mary McVey by act or conduct towards the defendant which were reasonably calculated to induce the defendant to believe that he had the consent of the said Mary McVey to have carnal intercourse with her, caused the defendant to believe that he had the consent of Mary McVey to have such intercourse with her and so believe the defendant had such carnal intercourse, if any, with the said Mary McVey, you will acquit him."

Under this instruction the jury find against appellant's contention. The criticism that this paragraph should have included the word "words" as well as acts and conduct is hypercritical. When the court instructed that if she, by her acts or conduct, caused defendant to believe that he had her consent, they would acquit, the jury could not have been misled, because he did use "words" also. The court charged the jury: "You are instructed that if you believe from the evidence, beyond a reasonable doubt, that the defendant on or about the 25th day of November, 1910, made an assault upon Mary McVey, a woman, and did then and there by force violently ravish and have carnal knowledge of her, the said Mary McVey, without her consent and against her will, you will find the defendant guilty as charged," etc. Appellant copies this paragraph and alleges that "the court should have charged the converse of this proposition, that if they had a reasonable doubt as to whether defendant made an assault, etc., they would acquit." The court applied the doctrine of reasonable doubt to the case as a whole, and there was no error in not thus charging the jury. The court gave the statutory definition of rape, and appellant complains that this was submitting issues not arising under the evidence. There might be some force in this contention if the court had not followed this paragraph with instructions that "in this case the indictment charges rape by force and threats, and I charge you," etc., thus limiting the consideration of the jury to rape as charged in the indictment.

We have carefully reviewed all the criticisms of the charge contained

in the motion for a new trial, and none of them present reversible error.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied February 28, 1912.—Reporter.]