ARCH WATSON v. THE STATE.

No. 4330.  Decided January 10, 1917.

### 1.—Occupation—Intoxicating Liquors—Continuance.

Where, upon trial of pursuing the occupation of selling intoxicating liquor in local option territory, defendant filed his second application for a continuance which the court overruled, and thereupon, in his motion for new trial, contended that said continuance should have been granted, but it appeared from the record on appeal that the testimony of the absent witness was not probably true and that a more favorable verdict would not have resulted even if the testimony had been obtained, there was no reversible error.

**2.—Same—Indictment—Two Sales—Persons Unknown.**

Where, upon trial of pursuing the occupation of selling intoxicating liquors, the indictment alleged a distinct sale by the defendant to a person named on a certain date, and different and other sales to other persons to the grand jurors unknown, and that he had made more than two sales, the same was sufficient.

**3.—Same—Continuance—Rule Stated—Discretion of Court.**

Under article 608, Code Criminal Procedure, it is provided that an application for a continuance shall not be granted as a matter of right, and a new trial shall not be granted, unless the facts set forth in said application were probably true. Following Carver v. State, 36 Texas Crim. Rep., 552, and other cases.

**4.—Same—Continuance—Motion for New Trial—Rule Stated.**

A judgment will not be reversed when it appears that the proposed absent testimony was not relevant, material, and probably true. Following Koller v. State, 36 Texas Crim. Rep., 496, and other cases.

**5.—Same—Continuance—Rule Stated—Practice on Appeal.**

This court will not reverse a judgment on account of the refusal of a postponement or continuance, unless in connection with the other evidence adduced on the trial, it is impressed with the conviction not merely that the defendant might probably have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury, a verdict more favorable to the defendant would have resulted. Following Land v. State, 34 Texas Crim. Rep., 330, and other cases.

**6.—Same—Additional Instructions—Rehearing Testimony.**

Where, upon trial of pursuing the occupation of selling intoxicating liquor in local option territory, the court with the consent of the defendant, had the stenographer to read to the jury upon its written request, certain portions of the evidence given at the trial, and the court thereafter refused certain requested charges because some of them were on the weight of the evidence and others were not requested in due time, all of which was borne out by the record, there was no reversible error.

Appeal from the District Court of Grayson. Tried below before the Hon. M. H. Garnett.

· Appeal from a conviction of pursuing the occupation of selling intoxicating liquor in local option territory; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Bookout & Jones*, for appellant.—On question of overruling application for a continuance: Harrington v. State, 31 Texas Crim. Rep., 577; Smith v. State, 142 S. W. Rep., 1173; Knowles v. State, 67 Texas Crim. Rep., 600; Baxter v. State, 68 Texas Crim. Rep., 136; Barnes v. State, 74 Texas Crim. Rep., 501.

*E. B. Hendricks*, Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted for pursuing the business of selling intoxicating liquor in Grayson County after the law prohibiting the sale thereof had been put in force in that county, and his punishment assessed at the lowest prescribed by law.

The indictment was in the approved form charging said offense and alleged a distinct sale by him to Floyd Abshire on November 24, 1915, and another to Elbert Abshire on January 2, 1916, and that on or about said date he made different and other sales to other persons, unknown to the grand jury, and during the months of November and December, 1915, and January, 1916, he made at least more than two sales of such liquor.

Deputy Sheriff Oscar Poff testified that he knew where appellant lived November and December, 1915, and January, 1916. That he was at his place five or six times during those months. That he found twelve quarts of whisky there. Most of the time he had it in a trunk in the kitchen. There was some beer in the ice box. The whisky was Hill & Hill whisky. That he had seen a good many people going in and out of appellant's place, both black and white, men and women, except that he saw no white women. That he took the whisky to the sheriff's office.

Deputy Sheriff Boyd' Craig testified that he knew where appellant lived in Denison during said months and that he investigated his place of business during those months some seven or eight times and found intoxicating liquor in the ice box every time he was there. That ten or eleven quart bottles was the most he found there. It was Hill & Hill whisky. And that he found whisky every time he was down there. That he saw people stop in at appellant's house, and that he did not remember of ever seeing Addie Watson, appellant's sister, at his house.

Constable D. Burris testified that he searched appellant's residence five or six times during said months and found whisky in the ice box most every time he was there. It was Hill & Hill whisky. That he saw several people visiting appellant's place. They would go in and stay but a few minutes and come out. He saw both whites and blacks visit the place. That he knew Addie Watson, appellant's sister, and can not say whether he ever saw her at appellant's house during said months.

Elbert Abshire testified in substance to three separate and distinct sales of whisky by appellant to him during said months, a pint at one time, a half pint at another and a quart the other, stating how much cash he paid him each time for the whisky. In telling how and where he would see appellant at each time, his testimony was to the effect that he would call him out of the back of his house to an alley and tell him how much whisky he wanted and give him the money therefor. That the appellant usually went into his house, was gone some short time and would bring and deliver the whisky to him. That some time when appellant would tell him he didn't have the whisky, he would ask him to see if he could not get it from Lee Scott. His testimony indicates that he got liquor from appellant one way or another during said months a greater number of times than three. That all the whisky he got from appellant was Hill & Hill whisky.

Floyd Abshire testified that during said months he would go to

appellant's house, call him out, and ask him if he could get some whisky, and appellant would say he would try; that he would give him the money for whatever quantity he wanted, and appellant would be gone five or ten minutes. He would go back in his house, through the back door, out of which he had called him, and sometimes when he would come back, he would come around the house. He would then bring and deliver the whisky to him where he had remained. The substance of his testimony was to show that during said time he bought whisky from appellant three or four distinct times.

Lucy Thomas testified that in December, 1915, she bought a half pint of whisky from appellant and paid him 50 cents for it.

Appellant did not testify at all. He introduced no testimony and no witness, except one, who testified only that Lucy Thomas' reputation for truth and veracity was bad.

Appellant was indicted the latter part of January, 1916, and tried in August, following. He made an application for a continuance on account of the absence of his sister, Addie Watson. It does not state it is his first. It must be his second, as it has allegations therein not required in his first but which are required in a second or subsequent application. She was sick at the time of his trial and could not attend. She had been subpoenaed. In his application he alleges that she would testify that, *"on the dates alleged by the indictment* and for several days prior and subsequent thereto, she was an inmate of his home and there during all this time and that appellant did not make the said sale or sales *as alleged in the indictment.* That during this time she saw no intoxicating liquors in his home, and *to the best of her knowledge and belief* there was none in his home during said time, and that because of the size, location and condition of his home, he could not have made a sale *as alleged in the indictment* without her knowledge of the same," and that "he knows from no other source from which he can secure the evidence to the same facts, and *to the same extent* that the same can be secured by this witness." He also claimed the court erred in refusing him a new trial because of the overruling of his application for a continuance. To his motion he attached the affidavit of his said sister—sworn to by her as "true to the best of her knowledge"—more elaborately but substantially to the same effect as his application would show she would testify. Whether that affidavit was introduced in evidence before the trial judge at the time he heard and overruled the motion for a new trial (Page v. State, 189 S. W. Rep., 951); and what other testimony, if any, was introduced, is not disclosed by the record.

The statute (art. 608, C. C. P.) expressly enacts that an application for a continuance by an accused "shall not be granted as a matter of right"; that the truth of the first, or any subsequent, application, as well as the merit of the ground set forth therein and its sufficiency, "shall be addressed to the sound discretion of the court called to pass upon the same." It further provides that "when an application for a

continuance is overruled and the accused convicted, if the testimony of the absent witness was of a material character and that the facts set forth in his said application were *probably true,"* a new trial should be granted. The decisions of this State since the enactment of said statute have held in accordance therewith.

Judge White, in his Ann. C. C. P., in sec. 643, subdiv. 2, lays down this correct rule: "An application for continuance will be held properly overruled when, in connection with the evidence adduced on the trial, it is apparent that the proposed absent testimony would not be probably true. Carver v. State, 36 Texas Crim. Rep., 552; Reyons v. State, 33 Texas Crim. Rep., 143; McKinney v. State, 31 Texas Crim. Rep., 583; Brotherton v. State, 30 Texas Crim. App., 369; Withers v. State, 30 Texas Crim. App., 383; Leeper and Powell v. State, 29 Texas Crim. App., 63; Wilks v. State, 27 Texas Crim. App., 381; Testard v. State, 26 Texas Crim. App., 260; Peterson v. State, 25 Texas Crim. App., 70; Melton v. State, 24 Texas Crim. App., 47; Parker v. State, 24 Texas Crim. App., 61; Collins and Lindly v. State, 24 Texas Crim. App., 141; Henning v. State, 24 Texas Crim. App., 315; Harvey v. State, 21 Texas Crim. App., 178; Doss v. State, 21 Texas Crim. App., 505; Rice v. State, 22 Texas Crim. App., 654; Murray v. State, 21 Texas Crim. App., 466; Cunningham v. State, 20 Texas Crim. App., 162; Bond v. State, 20 Texas Crim. App., 421; Mendiola v. State, 18 Texas Crim. App., 462; Chandler v. State, 15 Texas Crim. App., 587; Henry v. State, 38 Texas Crim. Rep., 306."

In section 647, Judge White again lays down this correct rule: "The court on appeal will not revise or reverse the judgment of the lower court refusing a continuance or postponement, and the overruling of the motion for new trial based upon the application for continuance or postponement, unless it is made to appear by the evidence adduced at the trial that the proposed absent testimony was relevant, material, and probably true. Koller v. State, 36 Texas Crim. Rep., 496; Lindsey v. State, 35 Texas Crim. Rep., 164; Moseley v. State, 35 Texas Crim. Rep., 210; Tate v. State, 35 Texas Crim. Rep., 231; McGrath v. State, 35 Texas Crim. Rep., 413; Wilkins v. State, 35 Texas Crim. Rep., 525; Waul v. State, 33 Texas Crim. Rep., 228; King v. State, 34 Texas Crim. Rep., 228; Cline v. State, 34 Texas Crim. Rep., 415; Wyley v. State, 34 Texas Crim. Rep., 514; Neel v. State, 33 Texas Crim. Rep., 408; Russell v. State, 33 Texas Crim. Rep., 424; Shaw v. State, 32 Texas Crim. Rep., 155; Hyden v. State, 31 Texas Crim. Rep., 401; Brookin v. State, 26 Texas Crim. App., 121; Browning v. State, 26 Texas Crim. App., 432; Boyett v. State, 26 Texas Crim. App., 689; Brooks v. State, 24 Texas Crim. App., 274; Jackson v. State, 23 Texas Crim. App., 183; Hennessey v. State, 23 Texas Crim. App., 340; Covey v. State, 23 Texas Crim. App., 388; Rice v. State, 22 Texas Crim. App., 654; Miller v. State, 18 Texas Crim. App., 232; Mathews v. State, 17 Texas Crim. App., 472; Beatey v. State, 16 Texas Crim. App., 421; Wooldridge v. State, 13 Texas Crim. App., 443; Word v.

State, 12 Texas Crim. App., 174; Clampitt v. State, 9 Texas Crim. App., 27; Dowdy v. State, 9 Texas Crim. App., 292."

And in the next subdivision he lays down this correct rule: "The court on appeal will not reverse a judgment on account of the refusal of a postponement or continuance unless, in connection with the other evidence adduced on the trial, they are impressed with the conviction, not merely that the defendant might probably have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to the defendant would have resulted. Land v. State, 34 Texas Crim. Rep., 330; Gallagher v. State, 34 Texas Crim. Rep., 306; Easterwood v. State, 34 Texas Crim. Rep., 400; Sinclair v. State, 34 Texas Crim. Rep., 453; Bluman v. State, 33 Texas Crim. Rep., 43; Goldsmith v. State, 32 Texas Crim. Rep., 112; Hyden v. State, 31 Texas Crim. Rep., 401; Hammond v. State, 28 Texas Crim. App., 413; Frizzell v. State, 30 Texas Crim. App., 42; Pruitt v. State, 30 Texas Crim. App., 156; Ellis v. State, 30 Texas Crim. App., 601; Browning v. State, 26 Texas Crim. App., 432; Boyett v. State, 26 Texas Crim. App., 689; Covey v. State, 23 Texas Crim. App., 388; Self v. State, 28 Texas Crim. App., 398; Phelps v. State, 15 Texas Crim. App., 45."

These rules have repeatedly and in recent decisions been quoted and approved by this court. Furnace v. State, 79 Texas Crim. Rep., 59, 182 S. W. Rep., 454; Stacy v. State, 77 Texas Crim. Rep., 52, 177 S. W. Rep., 114.

A consideration of the testimony of appellant's sister in his application makes it apparent that her proposed testimony was not probably true. In fact, the evidence adduced at the trial was clearly sufficient to make it appear to the trial judge, and to this court, that her testimony was not probably true, and that even if the jury had had her testimony, a more favorable verdict to the defendant would not have resulted. She is not shown by the application and her affidavit to have been personally present at the several times and places that the several witnesses testified positively to buying whisky from appellant, nor that she was present when the said several officers searched appellant's house and premises and found in his ice box and trunk the quantities of whisky they swore they found therein at the many times they were there and searched his house for that purpose, nor does she deny the truth of their testimony. So that, under the statute and decisions, we think no reversible error was committed by the trial court in overruling either his motion for a continuance or for a new trial.

After the jury had been considering the case for several hours, it returned into open court and through its foreman in writing stated to the court that "they desired to hear that part of the testimony read to the jury showing that a sale of intoxicating liquor was made by appellant to either of said Abshires after Lee Scott was sent to the penitentiary, or during the month of January, 1916." By the agreement of the defendant the court had the stenographer to read to the jury

certain portions of the evidence of said witnesses given at the trial. The appellant requested the court to give the jury these charges:

1. "There is no evidence in this case that Lee Scott was sent to the penitentiary, and you will not consider that he was so sent."

2. "There is no evidence in this case as to the time Lee Scott was sent to the penitentiary, and you will not consider that he was so sent."

3. "There is no evidence in this case as to the time Lee Scott was sent to the penitentiary, and, therefore, no evidence of a sale after he was sent to the penitentiary."

The court refused No. 1, stating that it was asked after the jury had been out considering the case a night and until afternoon the next day, and he refused it because: (1) "It was not proper for me to charge upon the matter indicated; and (2) it was requested too late; (3) because the question of the jury was in the alternative, asking for testimony as to a time (after Lee Scott was sent to the penitentiary) or (during the month of January)."

The court stated that the last two were presented to him in the afternoon of the second day after the case had been submitted to the jury and he jury had gone into court and requested to have certain evidence of the two witnesses, Abshires, reproduced and after the stenographer by agreement of both parties had read from the testimony of said witnesses to the jury and after the jury had again returned to their room; and he refused each of them, because: (1) "It is on the weight of the evidence and is improper; (2) it was not requested in due time; (3) because the question of the jury was in the alternative, asking for testimony as to a time (after Lee Scott was sent to the penitentiary) or (during the month of January)."

In our opinion the action of the court, under the circumstances as stated by him, was correct, and neither of said charges under the circumstances should have been given.

The judgment is affirmed.                                        *Affirmed.*