5  131
5  609
5  611
13* 237
19* 145
19* 146

# UNITED STATES, RESPONDENT, v. WILLIAM E. BASSETT, APPELLANT.

PARDON.—JUROR.—Under section 6 of the Act of Congress, approved March 22, 1882, a "pardon" granted to an offender has the effect of amnesty and such offender stands before the law precisely as if he had committed no offense and when summoned as a juror cannot be challenged under section 5 of the above act.

EVIDENCE.—HUSBAND AND WIFE IN CRIMINAL ACTION.—Under section 1156 of the Code of Criminal Proced. in a prosecution for polygamy, the wife is a competent witness against her husband, notwithstanding his objection, since polygamy is a crime against her.

POLYGAMY.—PROOF OF MARRIAGE.—In a prosecution for polygamy, the polygamous marriage may be proven by the confessions of the defendant and by circumstances tending to corroborate the confessions.

CRIMINAL LAW.—APPEAL.—INSTRUCTIONS.—In construing a charge it should be considered all together and not by separate and detached sentences.

APPEAL from a judgment of the district court of the first district. The opinion sufficiently states the facts.

*Messrs. Sheeks & Rawlins*, for appellant.

*Mr. W. H. Dickson*, for respondent.

ZANE, C. J.:

The defendant was convicted of the crime of polygamy, in the first district court, and sentenced to be imprisoned for the term of five years, and to be fined in the sum of $500. From this judgment the defendant has appealed.

Among the jurors called was one Andrew Larsen, who, in answer to a question put to him upon his *voir dire*, said that he had lived in the practice of polygamy, but had ceased to do so almost 17 years before. He also produced a pardon by the President of the United States, extending to him amnesty in the following words:

"*Chester A. Arthur, President of the United States of America, to all to whom these presents shall come, greet-*

*ing:* Whereas, Andrew Larsen, of the Territory of Utah, having been guilty of bigamy or polygamy and unlawful cohabitation before the passage of the act approved March 22, 1882, entitled 'An act to amend section 5352 of the Revised Statutes of the United States, in reference to bigamy and for other purposes,' has become subject to certain penalties and political disabilities. And whereas, having been assured that he has abandoned these unlawful practices, and no longer countenances or gives any support thereto, and that he has not been guilty thereof since the passage of the act aforesaid, and is now a law-abiding citizen; and whereas, the commissioners appointed under authority of the said act, and the governor and justice of the supreme court of the territory, having recommended him as worthy of the amnesty contemplated in section 6 of the above-entitled act, for which he in good faith has applied, and made oath as required in such cases; now, therefore, be it known that I, Chester A. Arthur, President of the United States of America, in consideration of the premises, and divers other good and sufficient reasons me thereunto moving, do hereby grant to the said Andrew Larsen a full and unconditional pardon.

"In testimony whereof," etc.

Nevertheless, counsel for the defendant challenged the juror on the ground that he had lived in the practice of polygamy, and had committed that offense as defined in section 5 of an act of Congress approved March 22, 1882, but the court denied the challenge, and defendant excepted and now assigns the same as error.

Did the pardon render the juror competent? The first section of the act above mentioned provides, "that, in a prosecution for bigamy, polygamy, or unlawful cohabitation, * * * it shall be a sufficient cause of challenge to any person drawn or summoned as a juryman or talesman—*First*, that he is or has been living in the practice of bigamy, polygamy, or unlawful cohabitation with more than one woman, or that he is or has been guilty of an offense punishable by the foregoing sections," etc. Section 6 of the same act is as follows: "That the president is hereby authorized to grant amnesty to such classes of

offenders guilty of bigamy, polygamy, or unlawful cohabitation before the passage of this act, on such conditions, and under such limitations as he shall think proper; but no such amnesty shall have effect unless the conditions thereof shall be complied with." The amnesty or pardon to the challenged juror was granted in pursuance of the above section, and it was without condition or limitation. It granted to Larsen "full and unconditional pardon." It has the effect of complete amnesty with respect to the future. He was restored to all the rights and privileges which lawfully he could have enjoyed if he had not committed the offense. With respect to the future, he was before the law as if he had never practiced either of the crimes mentioned. The term "amnesty" in the section quoted was used in its broadest sense.

The next section legitimated the issue of bigamous and polygamous marriages born before the act took effect. The intention of the act was to induce those who had practiced polygamy to abandon it, and to submit to the law. In case they would do so, the president was authorized to extend to them amnesty. They were invited to obey the law, with the promise that their crime would be effaced if they would do so. The word "amnesty" is defined thus: "An act of oblivion of past offenses, granted by the government to those who have been guilty of any neglect or crime, usually upon condition that they return to their duty within a certain period:" 1 Bouv. Law Dict. (15th Ed.) p. 156; also, 1 Rap. & L. Law Dict., 56.

A pardon relieves an offender from the consequences of an offense of which he has been convicted, while amnesty obliterates an offense before conviction; and in such case, he stands before the law precisely as though he had committed no offense. And while the term "pardon" was used by the president, it had the effect of amnesty.

In the case of *Knote* v. *U. S.*, 95 U. S., 149, the question was whether the general pardon and amnesty granted by President Johnson by proclamation on the twenty-fifth day of December, 1868, would entitle one receiving the benefit of such pardon and amnesty to the proceeds of his property previously condemned and sold under the con-

fiscation act of 1862, after such proceeds had been paid into the treasury. The court held that such person would not be entitled to such proceeds; that the pardon afforded no relief for the punishment already suffered by imprisonment, forced labor, or otherwise. The court said: "The offense being established by judicial proceedings, that which has been done or suffered while they were in force is presumed to have been rightfully done and justly suffered. and no satisfaction for it can be required. But when granted, in contemplation of law, it so far blots out the offense that afterwards it cannot be imputed to him to prevent the assertion of his legal rights. It gives to him a new credit and capacity, and rehabilitates him to that extent in his former position." On the authority of this case as well as from the nature of the pardon granted, we hold that this error in the record is not well assigned.

The indictment charged that defendant was married to Kate Smith, while he had a lawful wife living, by the name of Sarah Ann Bassett. Upon the trial, the latter woman appeared as a witness, stated that she was defendant's lawful wife, and expressed a willingness to testify that defendant told her that he was married to Kate, at the time and place mentioned in the indictment, and to testify further as to his conduct towards her and subsequently. The defendant objected to the testimony of this witness, on the ground that she was his lawful wife at the time of the confession. This objection the court overruled. Defendant excepted, and has assigned the same as error.

At common law, the general rule of evidence is that the husband and wife are not competent witnesses for or against each other. This rule was based on grounds of public policy. It was believed that such evidence would have a tendency to disturb the peace of families, and to weaken that feeling of mutual confidence which should accompany married life. In his work on Evidence, Judge Taylor states the exceptions to the general rule thus: "On the rule which precludes husbands and wives from giving testimony for or against each other in criminal proceedings, a necessary exception has been engrafted at

common law, when a personal injury has been committed by the one against the other. Were it not for this exception, the wife would be exposed without remedy to brutal treatment." The criminal procedure act of 1878, section 421, is as follows. "Except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife are competent witnesses for or against each other, in a criminal action or proceeding to which one or both are parties." Such was the common law, and such was the statute at the time the law now in question was enacted. The statute now in force is this: "All persons, without exception, otherwise than is specified in the next two sections, who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses.    *    *    *" Section 1154, Civil Code (Laws Utah 1884). Section 1156 limits this language thus: "There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined in the following cases: (1) A husband cannot be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent, nor can either, during the marriage or after, without the consent of the other, be examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other." Section 1154 having made the husband and wife competent in all cases, section 1156 provides that neither, without the consent of the other, is admissible, except in two classes of cases: *first*, in a civil action or proceeding by one against the other; and, *second,* in a criminal action or proceeding for a crime committed by one against the other. In the later act, the word "crime" is used; in the earlier, the phrase "criminal violence upon one by the other." In the case of the earlier law, violence is required, and in the later law it must be the case of a crime by the one against the other. In using terms so widely different in their import, the legislature must have

intended to express different meanings. The language of a statute should be given its ordinary meaning, unless other parts of the act, or peculiar circumstances, indicate a belief that a different meaning was intended. The legislature must be presumed to have known that crimes may be committed by the husband against the wife, and by the wife against the husband, without personal violence. A man who, having a lawful wife living, marries another woman, commits the crime of polygamy. Is, then, polygamy a crime against the lawful wife? It certainly is a breach of the implied, if not of the express, terms of the marriage contract. The husband is bound by that contract not to marry another woman while the marriage is in force. And because it is a breach of that contract, most hurtful in its consequences, it is declared to be a crime. Whenever the act or the conduct which constitutes a public offense or crime consists in a direct violation of the rights of an individual, the crime is against that individual, as well as against the public. The law recognizes the marital rights of a woman or man, as well as their rights to life, liberty, and security from personal violence; and the breach thereof by a second marriage, or by cohabitation with another woman as a wife, is often more injurious to the feelings of the lawful wife, as well as in other respects, as would be a deprivation of personal security or of personal liberty—more injurious than the shake of a fist, coupled with a threat or an attempt to commit a bodily injury. An attempt to poison the wife by the husband, without violence, is a crime against her, and renders her a competent witness, without consent, in a prosecution for the crime. And it is often quite as necessary for the lawful wife to testify, in order to protect her rights against plural marriage, in this territory, as it is to protect her from personal violence. The ground upon which the exclusion of the wife or husband rests is that it would destroy confidence, and produce discord. A man in the bed of a strange woman is in a very unfavorable situation to insist upon preserving inviolate the sacred concord of marriage, and harmony and confidence on the part of his wife.

The case of *State* v. *Sloan*, 55 Iowa, 217, 7 N. W. Rep., 516, was an indictment for bigamy. In the opinion the court said: "Mrs. Sloan, the first wife, was allowed to testify in behalf of the state, against the defendant's objection. Section 3641 of the Code provides that neither the husband nor wife shall be a witness against the other, except in a criminal proceeding for a crime committed by one against the other. In our opinion, if the defendant is guilty of bigamy, he committed a crime against his wife. We think she was a competent witness."

*State* v. *Hughes*, 58 Iowa, 165, 11 N. W. Rep., 706, was also a prosecution on an indictment for bigamy. In that case the court said: "Phebe Hughes, the lawful wife, was introduced by the state as a witness, against the defendant's objection, to prove the marriage between her and the defendant. In this we think that there was no error. The point was expressly ruled in *State* v. *Sloan*, 55 Iowa, 219, 7 N. W. Rep., 516." To the same effect is *State* v. *Bennett*, 31 Iowa, 24.

Under a statute of the state of Nebraska, permitting a husband or wife to testify in a criminal proceeding for a crime committed by one against the other, the supreme court of that state held that, on the trial of a husband on an indictment for adultery, the wife was a competent witness against him. *Lord* v. *State*, 23 N. W. Rep., 507. The provisions of the statutes under which these cases were decided are the same in substance as the one under consideration. The supreme courts of other states have held to the contrary under similar statutes. But we are clearly of the opinion that upon principle and upon authority, the wife was a competent witness, and that there was no error in permitting her to testify.

Counsel for defendant also insist that the evidence was insufficient to justify the verdict. The marriage of defendant to Sarah Ann Bassett was admitted, and the contention was as to the marriage in August, 1884, to Kate Smith. The proof of this marriage consisted of confession, and circumstances tending to corroborate those confessions.

In the case of *Miles* v. *U. S.*, 103 U. S., 304, the court held that the first marriage might be proven, in like man-

ner as any other fact, by the admission of the defendant, or by circumstantial evidence, and that it was not necessary to prove the first marriage by witnesses who were present at the ceremony. To the same effect is *U. S.* v. *Simpson*, 4 Utah, 227.

If a lawful marriage may be proven by such evidence, we see no reason why a polygamous marriage may not be proven by the same class of evidence. When confessions are voluntarily and deliberately made, correctly understood, and accurately reported, they are of the most reliable proof. "Indeed, all reflecting men are now generally agreed that deliberate and voluntary confessions of guilt, if clearly proved, are among the most effectual proofs in the law; their value depending on the sound presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience. Such confessions, therefore, so made by a prisoner to any person at any time and in any place, are at common law receivable in evidence, while the degree of credit due to them must be estimated by the jury according to the particular circumstances of each case." 1 Tayl. Ev. (8th Ed.) 742. We are of the opinion that the evidence was sufficient to support the verdict.

It is further insisted by defendant's counsel that the court below erred in using in the charge to the jury the following language: "You are not bound to believe the testimony of any witness or of any number of witnesses." This language, stated thus, is separated and disconnected from that which precedes and that which follows it. It is but one part of one sentence of a long charge. Standing alone, it does not describe the thought nor the idea of the court. It usually requires an entire sentence, often more, and sometimes a great number of sentences, to describe an idea, and to extend or qualify it, or make it clear. That part of the charge, which accompanies the statement objected to, is so connected with the statement as to qualify its meaning. It is: "You are the sole judges of the facts, of the credibility of the witnesses, and of the weight of the evidence, and in determining the credibility of the

witnesses, and the weight of the testimony, you should take into consideration the appearance of the witnesses upon the stand, their apparent candor or the want of candor, their interest in the outcome of the case, their relation to the parties interested in any way, and all the facts and circumstances surrounding the witnesses. You are not bound to believe the testimony of any witness, or of any number of witnesses. You are to search for the truth, believing only such testimony as carries conviction to your minds of its truth. The defendant is persumed to be innocent until he is shown to be guilty, beyond a reasonable doubt."

Section 30 of the Code of Civil Procedure (Laws Utah, 1884, p. 12) provides that the court, in the charge, "may state the testimony, and declare the law; and in each case he shall inform the jury that they are the sole judges of the credibility of the witnesses, of the weight of evidence, and of the facts." The part of the charge above quoted is but the statement of the substance of this statute, and the deductions resulting from it, its corollary. There was a conflict in the testimony of the witnesses as to the material facts. In view of such evidence the charge was given. Immediately after using the language objected to, the court told the jury that, in searching for truth, they should rely only on such testimony as they should believe to be true. The court did not in effect tell them that they might disregard the statements of uncontradicted witnesses; the evidence did not present that question. The evidence as to the material facts was conflicting and contradictory.

We find no error in the record sufficient to reverse the judgment of the court below, and, in view of the conclusions above reached, we do not deem it necessary to decide other points discussed.

The judgment of the court below is affirmed.

BOREMAN, J., and HENDERSON, J., concurred.