### ELZY EASTERWOOD v. THE STATE.

*No. 588. Decided April 27.*

1. **Continuance—Alibi—Cumulative Testimony—New Trial.**—On a motion for new trial based upon the overruling of defendant's application for continuance, which application was for two witnesses, by whom defendant proposed to prove an alibi; and where it was shown that one of said witnesses appeared and testified; that a number of other witnesses testified to this alibi; and that other witnesses were present who could have testified to the same facts, but were not called by defendant; *Held*, the absent testimony was cumulative; that it would not probably have influenced the verdict; that defendant has no ground for complaint, and that the new trial was properly refused.

2. **Juror—Challenge of, Because Challenged on a Former Trial.**—The mere fact that a juror was challenged peremptorily at a former trial constitutes no cause for challenge at a subsequent trial. Following Wilson v. The State, 3 Texas Criminal Appeals, 64.

3. **Murder—Evidence—Motive—Testimony of Deceased Witness at Examining Trial.**—On a trial for murder, where the testimony of the deceased taken at the examining trial was admitted as evidence over defendant's objections, *Held,*

that the evidence was admissible to show malice and motive on the part of defendant, inasmuch as it showed that deceased was a witness in a cattle-stealing case against a brother-in-law of defendant, and tended strongly to establish the fact that the murder was committed to prevent him from testifying as a witness in said case.

4. **Impeachment of Deceased's Testimony at Examining Trial—Evidence Supporting Said Testimony.**—On a trial for murder, where the defendant had attempted by a witness to impeach the testimony of deceased, taken at an examining trial previous to his death, by proof of contradictory statements afterwards made by him before his death, *Held,* that the State had the right to sustain and support the testimony of deceased by proving, by other witnesses, that he had always made the same statement as that sworn to by him at said examining trial.

5. **Impeachment of a Party's Own Witness.**—Where a witness on cross-examination gives testimony injurious to the party interrogating him, and as to matters about which he was not examined in chief, the rule, that as to such matters he was the witness of said party, does not debar the latter from impeaching the witness.

6. **Juror—Competency of—Convict Pardoned After Serving Out Sentence.** Under section 11, article 4, of the Constitution, the Governor, in all criminal cases except treason and impeachment, is empowered, after conviction, to grant pardons, etc. *Held,* that this power authorizes the pardon of a convict after he has served out his sentence of conviction; and that a pardon so granted removes disabilities and restores the convict to his full rights of citizenship, and revives his competency as a juror; and that the statute, articles 636 and 639, Code of Criminal Procedure, is subordinate to this right of pardon.

APPEAL from the District Court of Taylor. Tried below before Hon. T. H. CONNOR.

This appeal is from a conviction for murder of the second degree, the punishment having been assessed at twenty years' imprisonment in the penitentiary.

This is a companion case to Hamblin v. The State, *ante,* p. 368, and the essential facts in the two cases are the same. Inasmuch as these facts have been fully reported in the Hamblin case, it is not necessary to reproduce them here. The new questions involved in this case are fully illustrated in the opinion, without the necessity of additional statements.

*H. M. Furman* and *Cockrell & Cockrell,* for appellant, filed an able brief upon all the questions discussed by the court in the opinion.

As to the application for continuance, they cited Fowler v. Buckner, 23 Texas, 85; Hunt v. Makemson, 56 Texas, 12; McMichael v. Trueheart, 48 Texas, 219; McKinney v. The State, 8 Texas Crim. App., 636; Hyden v. The State, 31 Texas Crim. Rep., 403; Irvine v. The State, 20 Texas Crim. App., 12; Adams v. The State, 19 Texas Crim. App., 12; Wilson v. The State, 18 Texas Crim. App., 576; Pinckord v. The State, 13 Texas Crim. App., 477; Ninnon v. The State, 17 Texas Crim. App., 650; Jackson v. The State, 23 Texas Crim. App., 190; Williams v. The State, 11 Texas Crim App., 65.

The court erred in overruling defendant's challenge for cause to the juror Branch, who had been peremptorily challenged on a former trial of the cause. We are aware that this court has held, that in order to

make this a good ground of challenge it must further appear that the juror was prejudiced against the defendant by reason of the former challenge. But is that a correct ruling? Manifestly the reason is not a good one. How could a defendant show such prejudice? If a defendant is able to show prejudice, that of itself disqualifies the juror, whatever the cause; therefore, if prejudice be shown, the juror is excused on that ground, and not because of the former challenge. Then this holding of the court (Wilson v. The State, 3 Texas Criminal Appeals, 64) is about to this effect: If the defendant has peremptorily challenged the juror on a former trial, and if on the subsequent trial such juror appears to be subject to challenge for cause (for prejudice or other cause), the challenge for cause will be sustained.

Appellant proved by L. I. Easterwood, that after deceased had testified at the examining trial, he expressed to said witness his doubt as to the identity of appellant as one of his assailants; whereupon the State was permitted to ask the witness if he was not present on a former occasion, and after said examining trial when Mrs. Baker, John Baker, and Miss Lucy Easterwood were present, and Miss Lucy Easterwood said to John Baker, "You are not positive, are you, that Elzy (appellant) was one of the parties that assaulted you?" and John Baker replied, "Yes, it was sure Elzy, and no one else," and that Miss Easterwood thereupon threw her hands over her face and turned away, with the exclamation, "O, my God!" All this being denied by the witness, the State proved by Mrs. Baker that it did occur, and that the witness L. I. Easterwood was near and saw and heard it all; and further, that John Baker always said that appellant was one of his assailants, and at no time expressed any doubts.

We believe said testimony was inadmissible and injurious. All these acts were as to appellant res inter alios acta, and hearsay in character. The dramatic expression of concern on the part of Miss Easterwood should not have been received as a confession from appellant, which is the light in which a jury would perhaps regard it. Such evidence could not be received as original testimony. The mere statement of the proposition would seem to demonstrate that appellant was not present, and therefore certainly not chargeable with the acts and conduct of others, no matter what the relationship. If not original evidence, then Miss Easterwood's statement must have been admitted to impeach the witness L. I. Easterwood. Was it admissible for this purpose? Drake v. The State, 29 Texas Crim. App., 267; Rainey v. The State, 20 Texas Crim. App., 473; Walker v. The State, 6 Texas Crim. App., 576.

The court should have granted appellant a new trial, on account of the disqualification of the juror Rinard. In the original and supplemental motions for a new trial, it is charged that said juror had been convicted of a felony, and affidavits of his attorneys are made exhibits to his supplemental motions showing that they did not know that fact till said juror had been impaneled; and there is also attached to said

supplemental motion the record of the conviction and sentence of said
Rinard in the District Court of Hays County. The State, by way of
contest, produced the pardon of said Rinard for the offense of which
he had been so convicted. Appellant asserts the disqualification of
the juror, notwithstanding the pardon. The matter would seem to be
settled by article 636, Code of Criminal Procedure, subdivision 3, when
read in connection with articles 638 and 639; but the trial court ap-
pears to have taken the view that the pardon took away the disqualifi-
cation. We therefore think best to briefly call attention to the several
provisions of the code bearing on the subject. Article 636, section 3,
provides, that if the juror "has been convicted of theft or any felony"
he is subject to challenge for cause; but article 638 provides, that a
proposed juror "shall not be asked a question the answer to which may
show that he has been convicted of an offense which disqualifies him;"
and article 639 provides, that "no juror shall be impaneled when it
appears that he is subject  *  *  *  to the third cause of challenge in
article 636, although both parties may consent." This being a capital
case, all these provisions are applicable, and no room is left for com-
ment or argument. Defendant's third and fourth bills of exception
show, that the juror Rinard was sworn over the objections and protest
of appellant, after he had duly qualified himself, and after all appel-
lant's challenges for cause had been exhausted; and the affidavits
of counsel attached to the motion for a new trial show, that this par-
ticular cause of the juror's disqualification was wholly unknown till
the trial was almost complete. Not only in capital cases, but in all
cases, said juror was incompetent. Article 650, Code of Criminal
Procedure, says: "The challenges for cause in all criminal actions are
the same as provided in capital cases in article 636," except clause 11
in said article, which is applicable to capital cases only, said clause
having reference to conscientious scruples as to the infliction of the
death penalty. A like disqualification exists in civil cases. Rev.
Stats., art. 3010.

The record shows, that Rinard "has been convicted of  *  *  *
felony," and his pardon, however comprehensive, can not wipe out
that record. It can restore his citizenship, and no more. The right
to serve as a juror is a broader right than that of citizenship; it in-
cludes citizenship. Citizenship includes merely the privilege of vot-
ing for public offices and holding office, and the right to protection
and the enjoyment of private rights. Webst. Dict. None of these
terms comprehend the right of jury service, and it is universally
held, that States may prescribe educational, moral, and property
qualifications for jurors, and thereby none of the rights of a citizen
not possessing these qualifications are abridged or infringed upon.
The fourteenth and fifteenth amendments give citizenship to the col-
ored brother, and the right of suffrage, but do not give him the right
to serve as a juror. That is, the mere granting of citizenship and
suffrage do not include this right; in addition to being a qualified

citizen and voter, he must possess the other qualifications prescribed by law to be a juror, and be free from the disqualifications. At common law, the citizen as such had no right to serve as a juror; that was not one of his private rights, to which he was entitled by virtue of citizenship. Now we come this proposition: The pardon of a convicted felon rehabilitates him as to, and frees him from the consequences of, only those disabilities that were incident to the judgment of conviction at common law, and has no effect whatever as to disabilities annexed by statute. 1 Greenl. on Ev., sec. 378. Of course there are to be found many expressions to the effect that a pardon makes the "offender a new man," gives him "a new credit and capacity," clears the party "from the infamy of all other consequences of his crime" so that he may maintain an action for being written as a "felon," and that it absolves him "from all the legal consequences of his crime and conviction, direct and collateral." These expressions evidently have reference to those disabilities, punishments, etc., which were at common law the consequence of the judgment of conviction and not to statutory disabilities. At common law a conviction resulted in forfeiture of property, loss of citizenship (including suffrage), incompetency as a witness, etc. By the pardon all these are restored, but the right to serve as a juror is not restored; for the pardon could not restore what he never had. 1 Greenl. on Ev., sec. 378, p. 425, and note. The evident purpose of the statute is to exclude ex-convicts, whether pardoned or not, from jury service in all cases, civil, criminal, capital, and all others. In a civil case, in order to be qualified, the juror "must not have been convicted of felony," and must be a man of good moral character. If it is the purpose of the law to permit a pardoned convict to serve as a juror, why was disqualification number 3, "that he has been convicted of theft or any felony," enacted? The provision should be given some effect if possible. If it refers to unpardoned convicts, as seems to have been the view of the lower court, why was such a disqualification prescribed? A convict is not a "qualified voter," and therefore disqualifies himself by the very first question which the judge must ask him, even before he is tested by counsel. Code Crim. Proc., art. 631, sec. 1. And counsel also disqualify him by the first question they ask. Code Crim. Proc., sec. 636, subdiv. 1. If the statute be not given the construction for which we contend, it is merely repealed, nullified, not construed. We call attention to the case of Leeper and Powell v. The State, 29 Texas Criminal Appeals, 70, majority and dissenting opinions. All the court there in effect agree, that a verdict in a case like this is void. The dissent there is not on the question we raise here.

We almost feel that we are due the court an apology for occupying so much space in the discussion of a matter that appears to be fully and finally settled in our favor by an express provision of the code;

but the fact that so good an authority as the trial judge disagreed with our views, is an excuse for us.

We take it, that the validity of the judgment against Rinard will scarcely be called in question, yet should it be, we desire to call the attention of the court to the case of Attaway v. The State, 31 Texas Criminal Reports, 475, on the question of the sufficiency of the verdict. Under the California statute, which is the same as ours on this point, we cite Ex Parte Gibson, 31 California, 620, as decisive of the question.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was allotted twenty years in the penitentiary, under a conviction of murder in the second degree. His application for a continuance was on account of the absence of W. H. Kendrick and wife, by whom he expected to prove that he was at home, about a quarter of a mile distant from the scene of the shooting, at the time deceased was shot. Quite a number of witnesses testified to this alibi, and several were present, under the rule, for the purpose of testifying to the same fact, but were not introduced by him. Mrs. Kendrick appeared during the trial, and testified. Those who testified to the alibi also swore the witnesses who were under rule were with them, and the evidence for defendant shows they were cognizant of the facts upon which the alibi was predicated, if such facts were true, and yet they were not placed upon the stand by appellant to testify. Taking this record in its entirety, and the cogency of the testimony proving guilt, it is not in the least probable that the jury would have believed Kendrick had he been present, and testified as stated in the application. Nor will he be heard to complain in this matter, for it was in his power, and he failed to place on the stand those witnesses who were under rule, and who were willing and anxious to testify in his behalf in regard to his alibi. These witnesses were his near relatives, and warm, close friends, and were brought by him for the purpose of proving an alibi. It was his duty to have used all of the available testimony at his command before asking a new trial because of the absence of Kendrick. Willson's Crim. Stats., sec. 2186, for collated authorities.

It was not error to overrule appellant's challenge for cause to the juror Branch, because he had challenged the juror peremptorily on a former trial of this cause. No prejudice is shown, or sought to be shown, to have existed for this or for any other reason in the mind of the juror as against appellant. The mere fact that he had on a former trial challenged the juror peremptorily constituted no ground or cause for challenge on this trial. Wilson v. The State, 3 Texas Crim. App., 64.

Excerpts from the testimony of the deceased taken on the examining trial were excepted to for various reasons, pertaining in the main to matters occurring between deceased on the one side, and appellant, his

codefendant, Hamblin, and Bill Barbee on the other, just prior to the homicide, and grew out of the fact and related to the matter of deceased being a witness against Bill Barbee for the theft of Dulaney's cattle. Barbee was a brother-in-law of appellant, and a warm personal friend of Hamblin, and they were taking great interest in his case. This evidence was admitted on the ground that it showed motives and malice as showing the reason for the killing by the accused parties. Any fact in this connection, which showed or tended to show motives, or to intensify the motive and malice, and which proved the intimate knowledge by deceased of the facts which would prove Barbee's guilt and knowledge on the part of the accused that the deceased knew and would testify to such facts, would be admissible; and the nearer such facts known to the deceased would connect Barbee with the theft of the cattle, the greater would be the motive, on the part of Barbee and his friends, for the murder of deceased. Under this record, this evidence was clearly admissible, although some of the details of the extrinsic crime were mentioned by deceased. This is true, because it would render more cogent against Barbee that deceased was a dangerous witness against him for said cattle theft. The theory of the State was, that Hamblin killed deceased because he was a witness against Barbee in the theft case, and that appellant was acting with him in the murder. Now, if deceased was informed of facts tending to show the guilt of Barbee, and intended to relate them to the court and jury upon the trial of Barbee, it was of the highest importance to Barbee and his friends to prevent him from so doing; and the more cogent his testimony, Barbee and his friends, Hamblin and appellant, being informed thereof, the greater and more powerful the motive for the killing.

A bill of exceptions discloses, that defendant proved by L. J. Easterwood that after John Baker, the deceased, gave in his evidence at the examining trial in this case, witness and one Boyett were sitting up with him one night, either the night he died or the night before; that said Baker, in answer to questions propounded by witness to him (no one being present except witness, Boyett, and said Baker), expressed doubts as to his being positive that defendant was one of the persons who assaulted him; whereupon counsel for the State asked witness if he was not present on a former occasion, and after said examining trial, when Mrs. James Baker, John Baker, Miss Lucy Easterwood, witness' cousin, were present, and Miss Lucy Easterwood said to John Baker, "You are not positive, are you, that Elzy was one of the parties who assaulted you?" and John Baker replied, "Yes, it was sure Elzy, and no one else;" that Miss Lucy Easterwood thereupon threw her hands over her face, and turned away, with the exclamation, "O, my God!" all of which witness denied having seen or heard. Thereupon, in rebuttal, the court permitted the State, over defendant's objection, to prove by Mrs. James Baker, that after said examining trial, on one occasion, she and John Baker, L. J. Easterwood, and Miss Lucy Easter-

wood were present, when the above indicated matters did occur, and as stated in the question put to said L. J. Easterwood, that he "was right near, and saw and heard all." Objections to this evidence were urged, "because the matters inquired about were not proper matters for impeachment, as no statement made by L. J. Easterwood was contradicted, and the matters inquired about were collateral and immaterial." "In the same connection, Mrs. James Baker testified, that she was almost constantly with deceased after he was wounded, and that he at all times said Elzy Easterwood was one of the parties who assaulted him, and at no time expressed any doubts about it." Defendant objected, because this was hearsay, and no part of any conversation or act of said Baker heard by defendant. The defense having attempted to impeach the testimony of deceased in this manner, namely, by showing contradictory statements, the State had the right to sustain deceased by proving he had always made the same statement as that sworn to by him. But it may be contended that the State could not impeach L. J. Easterwood in this manner, because he had not referred in his testimony to the transaction or conversation related by Mrs. Baker. This may be true, but on his cross-examination he stated: "I never at any time heard John Baker say he was positive that Elzy was one of the parties that hurt him. I saw him several times after he was shot." This evidence was injurious to the State, and, conceding the State had made the witness her witness respecting this matter, yet she was not thereby debarred the right to impeach him, as was done. It may also be contended, that the exclamation and conduct of Miss Easterwood was not evidence against appellant. This may be conceded to be true also, and, had appellant specially excepted to same, the court should and doubtless would have sustained the objection. This, however, was not done, the objections urged being general, and to the whole matter inquired about. Nor did he ask the court to exclude the exclamation of Miss Easterwood.

Subsequent to the return of the verdict against appellant, he discovered that one of the jurors who tried him had served a term in the penitentiary, under a conviction for theft. This was made a ground of the motion for a new trial. To this the State replied with a full pardon granted the juror by the Governor in 1886, and after he had served out the term of his sentence. It is urged that the Governor had no authority to grant the pardon after the juror had served his time, and that, if he did have such authority, an absolute pardon can not and does not restore such a person to citizenship, to the extent of authorizing him to sit upon juries. Our Code of Criminal Procedure provides, that "In testing the qualifications of a juror, he having been sworn as provided in article 619, he shall be asked the following questions by the court, or under its direction: (1) Are you a qualified voter in this county and State, under the Constitution and laws of this State? * * * If the person interrogated answers the foregoing questions in the affirmative, the court shall hold him to be a qualified

juror, until the contrary be shown by further examination, or other proof." Code Crim. Proc., art. 631. Article 636 of the same procedure further provides, that "A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. It may be made for any one of the following reasons: (1) That he is not a qualified voter in the State and county, under the Constitution and laws of the State. * * * (3) That he has been convicted of theft or any felony." Article 639 enacts, that "No juror shall be impaneled when it appears that he is subject to the third clause of challenge in article 636, although both parties may consent." Recurring to the Constitution, we find that it ordains that "the following classes of persons shall not be allowed to vote in this state, to wit: * * * (4) All persons convicted of any felony, subject to such exceptions as the Legislature may make." Const., art. 6 sec. 1. It further declares, that "laws shall be made to exclude from office, serving on juries, and from the right of suffrage, those who may have been or shall hereafter be convicted of bribery, perjury, forgery, or other high crimes." Const., art. 16, sec. 2. If the party offered as a juror has been convicted of a felony, he is debarred the privilege of suffrage, unless the Legislature may by law remove such disability from the conviction. This disability must remain as long as the conviction stands, because it is a part of it. It is brought into existence by reason of the conviction, and remains until that conviction is removed. And, being so disqualified as a voter, the convict is therefore rendered incompetent as a juror. But, as said above, such disqualification attaches to the conviction, unless otherwise provided. That this may be done by the Legislature is expressly declared by the Constitution, and that body may relieve a convicted person from the disabilities otherwise attaching to such conviction under the terms of article 6, section 1, subdivision 4, already cited. Such we understand to be the meaning of this provision of the Constitution. In other words, this provision of the Constitution is not, and was not intended to be, a limitation upon the pardoning powers confided in the Governor. Nor is this view antagonistic to the provisons of section 2, article 16, of the Constitution, for it only requires suitable legislation excluding from the various privileges of citizenship persons who are convicted of the felony therein specified. The Constitution and legislative enactments referred to therefore only relate to the disabilities attaching to felony convictions, and have no reference whatever to the question of pardons. The pardoning power in this State can not be invoked or exercised until the conviction is an accomplished fact, for it is expressly declared, that "in all criminal cases, except treason and impeachment, he [the Governor] shall have power, after conviction, to grant reprieves, commutations of punishments, and pardons; and under such rules as the Legislature may prescribe, he shall have power to remit fines and forfeitures." Const., art. 4, sec. 11.

· This idea of restricting the executive clemency to cases of conviction would seem to be in harmony with that merciful principle which underlies our whole political fabric pertaining to criminal jurisprudence, to wit, presumption of innocence and reasonable *doubt of guilt* until the conviction has been obtained. We see no conflict or antagonism between the provisions of the Constitution in regard to the pardoning power and those which relate to disabilities attaching to convictions for felony. The pardoning power is intended to relieve of the consequences of the conviction, and it is dormant until called upon to relieve the convicted party of the effects of such conviction. It would seem almost a work of supererogation now to discuss the effects of an absolute pardon, and it would appear almost strange, at this late day, that its effect could be thought to be otherwise than that of complete remission of all guilt that might attach to the conviction. This full effect could not be restricted, unless the organic law itself should so prescribe.

It may be well enough, perhaps, to refer to some of the cases in this connection. In Ex Parte Garland, the Supreme Court of the United States says: "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender, and when the pardon is full it releases the punishment and blots out of existence the guilt, so that, in the eye of the law, the offender is as innocent as if he never had committed the offense. * * * If granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity." 4 Wall., 333, 380. In Klein's case, it was said, that "it blots out the offense, pardons and removes all its penal consequences." 13 Wall., 128, 147. Again, "in contemplation of law, it so far blots out the offense that afterwards it can not be imputed to him to prevent the assertion of his legal rights. It gives him a new credit and capacity, and rehabilitates him to that extent in his former position." Knote v. United States, 95 U. S., 149; Carlisle v. United States, 16 Wall., 147; United States v. Wilson, 7 Pet., 150; United States v. Padleford, 9 Wall., 531. This is true even where the disability is prescribed by a particular statute as a penalty for its violation. Hay v. The Justices, 24 Q. B. Div., 561. It was there said: "It is a purging of the offense, * * * and so far clears the party from the infamy and all other consequences of his crime, that he may not only have an action for a scandal in calling him traitor or felon after the time of the pardon, but he may also be a good witness." Such are the decisions in this State. Rivers v. The State, 10 Texas Crim. App., 177; Carr v. The State, 19 Texas Crim. App., 645. And this is true even though the offense has been fully expiated, for in that case a pardon may be granted. Rivers v. The State, 10 Texas Crim. App., 177; 6 Crim. Law Mag., 472, and note 2, for cited authorities. Disabilities arising out of and attaching to a conviction for felony in this State are removed by the absolute pardon. The provisions in the

Constitution and the laws of this State, imposing disabilities because of conviction, are not and can not be limitations upon the authority of the Governor to pardon. It is beyond the power of the Legislature to so restrict the consequences of the pardon. His power is supreme, and beyond the reach of legislative limitations.

When a full pardon takes effect, all disabilities disappear, and the grantee stands as if he had never been convicted. A removal of the conviction necessarily removes the disabilities, because they are but consequences of the conviction. This would, therefore, restore the party to his right of suffrage, and his competency as a juror. The authorities are clear upon these questions, as we understand them.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring