WICKIZER v. WILLIAMS.  (No. 5376.)†

(Court of Civil Appeals of Texas. Austin. Dec. 9, 1914. Rehearing Denied Feb. 3, 1915.)

1. ADVERSE POSSESSION ⚖=108—REQUISITES—MARKED BOUNDARIES.

Where plaintiff claimed 160 acres of land by adverse possession, it was not necessary that he prove he had ever marked and identified on the ground the specific 160 acres, but it was sufficient that he prove peaceable and adverse holding of a portion of the land in controversy including his improvements, and that he lived, cultivated, used, and enjoyed the same claiming adversely 160 acres including the improvements for 10 years prior to the filing of the suit, to constitute a compliance with the 10-year statute of limitations (Rev. St. 1911, arts. 5675, 5676).

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 624–628; Dec. Dig. ⚖= 108.]

2. ADVERSE POSSESSION ⚖= 46— ELEMENTS — CONTINUOUS POSSESSION.

Where plaintiff's possession of the land in controversy was continuous for more than the statutory period, except for a short time in the spring of 1904 when he was absent at work in a nearby sawmill, when his house was occupied

by tie cutters with his consent for about two months, he having returned to his home within two weeks after the tie cutters left and continued to remain there thereafter, his possession was continuous.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 232–254; Dec. Dig. ☞ 46.]

3. ADVERSE POSSESSION ☞46—REQUISITES—CONTINUOUSNESS.

Short breaks in the continuity of possession will not defeat the possessor's adverse claim, where the absence is reasonable.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 232–254; Dec. Dig. ☞ 46.]

4. ADVERSE POSSESSION ☞109—REQUISITES—ACKNOWLEDGMENT OF TENANCY.

Where plaintiff claimed title to land in controversy by adverse possession, the court properly limited evidence of an alleged acknowledgment of tenancy by plaintiff after the completion of the bar of the statute to its effect on the question whether plaintiff's prior possession was adverse, since such admission could not defeat a title already acquired.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 629–635; Dec. Dig. ☞ 109.]

5. PARTIES ☞96 — JOINDER — NECESSITY — ATTORNEYS—INTEREST IN RESULT.

Where, prior to instituting suit to try title to certain land which plaintiff claimed by adverse possession, he conveyed to his attorneys a part of the land, and the attorneys thereafter prosecuted the suit to a successful issue and asked an affirmance of the judgment on appeal, they were estopped to complain of the judgment, and hence the court did not err in refusing over their objection to make them parties.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 167–177; Dec. Dig. ☞96.]

6. JURY ☞45—COMPETENCY OF JUROR—CONVICTION OF FELONY—PARDON.

Where a juror had been convicted of a felony in a foreign state, but had been restored to citizenship by the grant of a full pardon, he was not disqualified under Vernon's Sayles' Ann. Civ. St. 1914, art. 5115, subd. 6, providing that no person who has been convicted of a felony shall be a qualified juror in Texas.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 249, 251; Dec. Dig. ☞45.]

Appeal from District Court, Montgomery County; L. B. Hightower, Judge.

Trespass to try title by John Williams against T. C. Wickizer. Judgment for plaintiff, and defendant appeals. Affirmed.

Baldwin & Baldwin, of Houston, for appellant. A. L. Kayser, J. Llewellyn, and W. N. Foster, all of Conroe, for appellee.

RICE, J. This is a suit in trespass to try title, brought by appellee against appellant to recover title and possession of 160 acres of land out of the P. Hunter survey in Montgomery county, based upon the 10-year statute of limitation. Appellant answered by plea of not guilty, and also asserted that appellee was his tenant, which fact was denied by appellee. A jury trial resulted in a verdict and judgment in behalf of appellee, from which this appeal is prosecuted.

It is contended by the first and second assignments of error on the part of appellant that the court erred in refusing to give a special charge directing a verdict in his favor, on the ground of the insufficiency of the evidence to warrant a judgment for appellee. Appellee objects to the consideration of these assignments for the reason that the refusal to give such charge was not excepted to at the time of the trial, as required by the Acts of the 33d Legislature, pp. 113, 114, for which reason we think we might refuse to consider said assignments. Waiving this, however, we hold that said charge was properly refused because, in our judgment, the evidence was sufficient as to each of the issues raised to require the submission of the case to the jury. Wherefore said assignments are overruled.

[1] We do not think there was any error in giving the charge complained of in the third assignment, because, under it, it was not necessary, in order for plaintiff to recover, to show that he had ever marked and identified upon the ground any specific 160 acres. It was only necessary to show that he had held peaceable and adverse possession of a portion of the land in controversy, including his improvements upon which he lived, cultivating, using, and enjoying the same, claiming adversely 160 acres thereof, including his said improvements, for a period of 10 years prior to the filing of this suit, which is in accordance with the requirements of the 10-year statute of limitations. See articles 5675, 5676, R. S. 1911; Louisiana & Texas Lumber Co. v. Kennedy, 103 Tex. 297, 126 S. W. 1110; Id., 142 S. W. 990; Louisiana-Texas Lumber Co. v. Stewart, 130 S. W. 199; Ball v. Filba, 153 S. W. 685; Bering v. Ashley, 30 S. W. 838.

[2, 3] It is urged by one of the propositions under this assignment that possession was not continuous. With reference to this, it appears that appellee and his wife went upon the land in controversy in 1897, erected a small cabin thereon, in which they lived, and thereafter put a few acres in cultivation, which was increased from time to time. They continued in possession of the land, using and cultivating the same by themselves or through their tenants, year by year, until a short time before the filing of this suit, which was on the 30th of September, 1912, with the possible exception of a short period in the spring of 1904, when it seems that the appellee was absent from home at work at a nearby sawmill, when his house was occupied by some tie cutters, with his consent, for some two months; but within two weeks after they left he returned to his home, where he continued to live until 1912, as above stated. It has been held by our courts that short breaks in the continuity of possession will not defeat one's claim under our statute of limitations, where the same is shown to be reasonable. See Dunn v. Taylor, 102

Tex. 85, 113 S. W. 265 et seq. This assignment is therefore overruled.

By the first proposition under the fourth assignment, it is complained that, in submitting the case to the jury, the court instructed them that a verdict might be returned for plaintiff, without requiring the jury to believe that the possession was continuous for a period of 10 years. This objection is not tenable, because, taking the charge as a whole, it does require the jury to believe that the possession must have been continuous for a period of 10 years before they could find for appellee. And, further, taken as a whole, the charge did not authorize a verdict for the appellee, as contended by appellant, without reference to what might be the finding of the jury as to his occupying the land as appellant's tenant, because the court did, at the instance of appellant, instruct the jury that, if he (appellee) had occupied the land as the tenant of appellant, then they should find for appellant.

[4] Appellee requested, and the court gave, the following charge:

"You are further charged in this case that if you believe from the evidence that plaintiff had possession of the land and occupied the land in question, cultivating, using, and enjoying the same by himself and tenants for 10 consecutive years prior to the filing of this suit, but you should further believe that thereafter the plaintiff acknowledged himself to be the tenant of the defendant, either in writing or verbally, you will only consider such acknowledgment of tenancy, if any, as bearing upon the nature of plaintiff's prior possession; that is, whether the same was adverse to defendant or not."

This furnishes the basis for the fifth assignment. This charge, we think, was proper, because if an acknowledgment of tenancy is made after the completion of the bar of the statute, as appears from the evidence here, then the court should, we think, limit the effect of such acknowledgment to the question of the character of such prior possession; that is to say, as to whether the same was adverse or not. Such admission could not defeat a title already acquired. See Barrett v. McKinney, 93 S. W. 240; Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 511; Williams v. City of Galveston, 58 S. W. 552; Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Thayer v. Clark, 47 Tex. Civ. App. 61, 104 S. W. 196.

[5] Prior to the institution of this suit, appellee employed Llewellyn & Foster, a firm of attorneys, to bring the suit for him, and, in consideration of such services, conveyed to them a part of the land in controversy. They were not made parties to this litigation, for which reason it is urged by appellant that the court erred in rendering judgment for the appellee, and in failing to grant a new trial on the ground that they were not made parties. These attorneys prosecuted this suit in the lower court and likewise represent appellee here, and ask an affirmance of the judgment, for which reason we think they could not be heard to complain of it.

They are so connected with the suit as to be bound by the judgment. In Bonner v. Green, 6 Tex. Civ. App. 96, 24 S. W. 835, involving a similar question, where an attorney, who had been employed to bring suit for a party against a railway company for personal injuries, was shown to have been entitled to a portion of the recovery for his services, it was held that it was not necessary to make him a party; and in discussing this matter Mr. Justice Key said:

"As attorney for the plaintiff he brought the suit, presented the exceptions to the plea in abatement, prosecuted and recovered in the plaintiff's name on the entire cause of action, and appears for him in this court, and asks that the judgment be affirmed. We think this is equivalent to formal consent that the entire cause of action should be litigated in the plaintiff's name. As a general rule, an attorney is not bound by a judgment rendered for or against his client. But when it is suggested, in the proper manner, that he has an interest in the cause of action, and ought to be made a party, and the attorney, although claiming to act for his client, objects to the course being taken which would result in his becoming a formal party, and urges the court to proceed and try the case as it stands, then, when the court proceeds as he requests, and litigates the entire cause of action, he ought to be held as individually consenting that the judgment shall determine his rights as well as those of his client."

See, also, 2 Black on Judg. §§ 539–541; Bomar v. Ft. Worth Bldg. Ass'n, 20 Tex. Civ. App. 603, 49 S. W. 914.

[6] After the trial it was discovered that Ferguson, one of the jurors, had been convicted in the state of Mississippi of a felony, for which reason it is urged that the court erred in failing to grant appellant's motion for a new trial based on the incompetency of this juror. No person who has been convicted of a felony is a qualified juror in this state. See Vernon's Sayles' Civ. Stat. art. 5115, subd. 6. It appears from the testimony that Ferguson had been pardoned and his citizenship fully restored many years prior to his service as juror. It seems that a conviction of a felony in one state will not bar the right of a witness to testify in the courts of another. Mr. Greenleaf, in this connection, says:

"Accordingly, it has been held, upon great consideration, that a conviction and sentence for a felony in one of the United States did not render the party incompetent as a witness in the courts of another state, though it might be shown in diminution of the credit due to this testimony." 1 Greenl. (15th Ed.) § 376. Nor will it render a juror incompetent unless the statute so provides.

In 24 Cyc. subd. 6, p. 198, discussing this question, it is said:

"At common law a conviction of a felony was a disqualification to serve as a juror, and under the statute in some jurisdictions a juror is disqualified if he has been convicted of certain crimes, is at the time under indictment, or has within a certain time been indicted of an offense of the same character as that charged against the accused. The disqualification applies, although the conviction was prior to the enactment of the provisions making it a disqualification. But, unless the statute so provides, a conviction in one state does not disqualify a

person to serve as a juror in another"—citing Queenan v. Territory, 11 Okl. ·261, 71 Pac. 218, 61 L. R. A. 324.

Continuing, it is said:

"An absolute pardon removes the disqualification to act as a juror imposed by the statutes providing that persons convicted of certain crimes shall be disqualified."

In support of the text, we find cited Easterwood v. State, 34 Tex. Cr. R. 400, 31 S. W. 294; U. S. v. Bassett, 5 Utah, 131, 13 Pac. 237; Puryear v. Commonwealth, 83 Va. 51, 1 S. E. 512.

The exact question here presented was raised and determined adversely to appellant's contention in the case of Easterwood v. State, supra, wherein it was held that an absolute pardon removes disability and entitles the party to serve as a juror in this state. Believing that the juror was competent by reason of the pardon which restored his citizenship, we overrule this contention.

We have fully considered the remaining assignments and regard them without merit.

Finding no reversible error in the proceedings of the trial court, its judgment is affirmed.

Affirmed.

---

Ex parte INNES.   (No. 3370.)

(Court of Criminal Appeals of Texas.   Jan. 13, 1915.   Rehearing Denied Feb. 10, 1915.)

EXTRADITION ☞41 — INTERSTATE — FUGITIVE FROM JUSTICE.

Under Const. U. S. art. 4, § 2, providing that a person charged in any state with crime, who shall flee from justice and be found in another state, shall on demand of the executive of the state from which he fled be delivered up to be removed to the state having jurisdiction of the crime and Code Cr. Proc. 1911, art. 1088, declaring that a person charged in another state with crime, who shall flee from justice and be found in the state, shall on demand of the executive of the state from which he fled be delivered up for removal to that state, a fugitive brought into Texas by requisition from another state may, while in custody, be surrendered to a third state on it demanding his return for a crime committed therein.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 51–53; Dec. Dig. ☞41.]

Davidson, J., dissenting.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Habeas corpus by Ida May Innes for her discharge from custody under a requisition warrant. From a judgment denying relief, applicant appeals. Affirmed.

Swearingen & Ward and Jno. H. Bickett, Jr., all of San Antonio, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. This is a companion case to that of Victor E. Innes, this day decided, 173 S. W. 297, and the facts are identical. There can be no question that relator is a fugitive from justice. She is charged with crime alleged to have been committed in the state of Georgia, and she fled from that state; but it is insisted that she fled to the state of Oregon and had her residence in that state, and the Governor of that state might honor a requisition, yet the Governor of Texas could not do so, because her presence in this state is not voluntary—that she had not fled to this state for an asylum. The only question we think it necessary to discuss is, Did the Governor of Texas have authority in law ·to grant the requisition and order her to be delivered to the Georgia authorities? The record discloses that she did not come into this state voluntarily, but that, being charged with crime, alleged to have been committed in Bexar county, the Governor of Texas issued a requisition on the Governor of Oregon, who honored same, and she was in Texas by reason of being brought here on that requisition. When tried for the offense with which she was charged in Bexar county, she was acquitted. It then developed that while she was in jail in Bexar county the Governor of Texas had granted a requisition from the Governor of Georgia, and, instead of being discharged from custody, she was immediately arrested on the requisition. A writ of habeas corpus was sued out before Judge Anderson, who refused to release her, and ordered her turned over to the Georgia authorities to be conveyed to that state to be tried for the offense with which she is charged in that state. From that order relator has appealed to this court, and makes the contention that, as she was brought here from Oregon by the officers, the Governor of this state has no authority to grant a requisition.

This is a question that has been before the courts of this country but a few times, and the decisions are not entirely in harmony. Mr. Spear, in his work on Extradition, sustains the contention of relator, and bases his reasoning mainly on the wording of the United States statute, which reads as follows:

Section 5278, U. S. Rev. Stat. (Comp. St. 1913, § 10126): "Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured," etc.

It will be noticed that this statute requires the requisition to be issued by the governor of the state from which the person *has fled*, and it has been held, as contended by Mr. Spear, in almost an unbroken line of decisions, that, unless a person was in the state at the time of the commission of the offense and subsequently left that state, such person cannot be extradited under the above statute